MAGGIE LAHEY, as Administratrix, etc., of WILLIAM LAHEY, Deceased, Respondent, *v.* WILLIAM OTTMANN & COMPANY, Appellant.

*Evidence — self-serving declarations — res gestæ — power of an employee to bind his employer by admissions as to his own negligence — admission by silence — general objection to evidence.*

Whether self-serving declarations are admissible or not depends upon whether they were made under such circumstances that they are presumed to be instinctive; if they may have been the result of thought or deliberation they are not admissible.

In case a principal is liable for the tort of his agent, statements of his agent made during the commission of the wrong are admissible as against the principal, but it is essential that the statements or admissions should be part of the transaction to which they relate.

In case an agent or employee commits a tort for which his principal is sought to be held liable, and sometime afterwards makes an admission or statement against the interest of his principal, such admission or statement is not admissible in evidence against the principal unless authority from him is shown, to the employee, to make the admission or statement.

An employee or agent cannot bind his principal by an admission by conduct, by remaining silent when statements which ought to be denied are made in his hearing, unless he has authority to bind his principal by a direct admission or statement.

On the trial of an action brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defend-

ant's employee while driving a cart on a city street, a policeman was permitted to testify, as a witness for the plaintiff, to certain self-serving declarations of the decedent as to his conduct, and that of the defendant's driver, made in the presence of the driver, some blocks distant from the place of the accident and sometime after the accident occurred; the declarations were not voluntary, but were drawn from the decedent by questions of the witness.

*Held*, that the declarations were not admissible as part of the *res gestæ*, or upon the ground that the defendant was bound by the conduct of his driver when they were made or by the driver's failure, if he did fail, to deny them.

The plaintiff sought to introduce statements made by the defendant's driver some little time after the accident, at a police station, when a criminal complaint was made against him, and which evidently referred to his criminal liability and related to the complaint then made against him.

*Held*, that under such circumstances the driver could not, at that time, be deemed to have been acting as the agent of the defendant or in the course of his employment.

An objection "to any statement made by the deceased," *held*, to be sufficiently explicit to raise the question that declarations made by the decedent, *prima facie* incompetent, were inadmissible in evidence.

APPEAL by the defendant, William Ottmann & Company, a business corporation, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 17th day of March, 1893, upon a verdict in favor of the plaintiff rendered at the New York Circuit, and from an order denying the defendant's motion for a new trial made upon the minutes.

*William S. Cogswell*, for the appellant.

*William F. Randel*, for the respondent.

FOLLETT, J.:

This action is for the recovery of damages occasioned by the death of the plaintiff's intestate caused, it is alleged, by the negligence of the defendant's employee.

On the 7th of September, 1892, plaintiff's intestate was run over by defendant's cart on Third avenue near Thirty-second street, sustaining injuries from the effect of which he died on the next day. It is alleged in the complaint and admitted in the answer that the defendant is a corporation; that it owned the horse and cart, and that it was driven by its employee while engaged in transacting defendant's business. At the time of the accident the horse was being driven on the west or down-town track of the Third avenue

railroad, and at the same time a car passed on the east or up-town track of said railroad. According to decedent's declaration, made shortly after the accident, he was in the street for the purpose of taking this up-town car, and the defendant's driver testified that such was his apparent purpose.

Cunningham, a witness called by the plaintiff, and the only witness besides the driver who saw the decedent just before the accident, testified that he left the northwest corner of Thirty-second street and Third avenue to cross the avenue, but he could not state his purpose. There is little or no evidence as to what the decedent or the driver did immediately preceding the collision except that given by the driver and the declarations of the intestate, the admissibility of which is about to be considered. Immediately after the accident decedent was taken to Brimelow's drug store, which one witness testified was on the corner of Thirty-first street and Third avenue, and another, that it was on the corner of Thirtieth street and that avenue. It was either one or two blocks from the place of the accident. When the decedent was being taken into the drug store, John Casey, a policeman, being attracted by the crowd, entered the store where the driver and the decedent then were. What then occurred will best be described by quoting the policeman's evidence, who was called by the plaintiff. "I arrested the driver, and had a talk with the deceased, in the presence of the driver. Q. State what conversation you had with the deceased. [Objected to.] Q. Was this immediately after the accident? A. Yes, sir.

"By the Court. — Q. Tell how you heard of it. A. My attention was attracted to a crowd at Thirty-first street. A man came rushing up to me and said : ' There is an accident; a man is run over, and there were three or four men taking him into a store — a drug store.' I asked where was the man that drove the wagon ; they said : ' We have him here.' I immediately placed him under arrest. I asked the deceased how he got run over. [Defendant's counsel objects to any statement made by the deceased.] Q. Was the driver there with you ? A. Yes. [Objected to ; objection overruled ; exception taken.]

"By plaintiff's counsel. — Q. State what the deceased said to you. A. I asked how the accident occurred. He said he was about to take a Third avenue car ; he left the sidewalk and this wagon

came along; he was about to board the car, and this wagon came along, and he held his hand up to pull them up, and before he had a chance to get out of the way he was thrown down."

Afterwards, the time not appearing, the policeman took the decedent and the driver to the station house.

" Q. Did he (intestate) at any time make any further remark ? A. Yes, in the station house. Q. Was the driver there ? A. Yes, sir. Q. State what he said. A. When he was taken before the sergeant the sergeant asked him : ' Are you going to make a charge against this man ? ' He said : ' Well, if he will pay all expenses I won't.' The sergeant said : ' Take him in the back room.' While he was in there he had a conversation with the driver ; he (intestate) said : ' You had no right to do what you done ; a fool would not do it, and I will make a charge against you.' "

The rulings of the court by which the declarations of the intestate were admitted are challenged on this appeal, and it is sought to sustain them upon two grounds : (1) That the declarations were a part of the *res gestæ* ; (2) because they were made in the presence of the defendant's driver. Whether self-serving declarations are admissible or not depends upon whether they were made under such circumstances that they are presumed to be instinctive, but if they may have been the result of thought or deliberation they are not admissible. The declarations at the drug store are clearly not a part of the *res gestæ*. The accident occurred at the corner of Thirty-second street, and the drug store was either one or two blocks away, and some time had intervened between the accident and the interview ; how much is not disclosed by the record. The declarations were not voluntary, but were drawn from the declarant by the question of the policeman. These declarations were not admissible as a part of the *res gestæ* under the rule laid down by the Court of Appeals. ( *Whitaker* v. *Eighth Avenue R. R. Co.*, 51 N. Y. 295 ; *Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 id. 274 ; *Martin* v. *N. Y. C. & H. R. R. R. Co.*, 103 id. 626.) The declarations made at the station house are still more remote and objectionable. Were the declarations admissible because made in the presence of the defendant's driver ? In case a principal is liable for the tort of his agent, statements of his agent made during the commission of the wrong are admissible as against the principal, but it is essential

that the statements or admissions should be part of the transaction to which they relate. In case an agent or employee commits a tort for which his principal is sought to be held liable, and sometime afterwards makes an admission or statement against the interest of his principal, it is not admissible in evidence against him unless authority is shown on the part of the employee to make the admission or statement. In this case the driver made no distinct admission or statement, and the only ground upon which it can be urged that these declarations made by deceased amount to an admission by the driver is that they were made in the presence and presumptively in the hearing of the driver. When a statement is made in the presence of a person interested, by an adversary and under such circumstances that it ought to be denied, and the interested person remains silent, it becomes an admission by conduct, but before a statement so made becomes admissible by reason of the conduct of the person to whom made, it must be shown that he remained silent or that by his conduct he tacitly admitted the truth of the statement. An employee or agent cannot bind his principal by conduct unless he has authority to bind him by a direct admission or statement. The reception of these declarations of the driver cannot be sustained on the ground that they were a part of the *res gestæ*, or upon the ground that the defendant was bound by the conduct of the driver or by his failure, it he did fail, to deny the statements. The driver's statement at the police station was some little time after the accident, and was evidently made with reference to the criminal liability of the driver, and related to the complaint then made against him. Under such circumstances, the driver cannot be deemed to have been acting as the agent of the defendant and in the course of his employment.

It is urged that the objection " to any statement made by the deceased," and the exception subsequently taken to the ruling of the court, are not applicable to the evidence subsequently given. At first, the court did not rule on the objection, but as soon as a ruling was made an exception was taken, and we think that the objection and exception clearly related to the admissibility of the decedent's statements and to nothing else. It is also urged that the objection is not sufficiently explicit to raise the question that the evidence was inadmis-

sible.   The fact sought to be proved, the conduct of the decedent and the driver, was relevant and competent, but the mode by which it was sought to be proved — by the decedent's statement — was not *prima facie* competent, and to this point the objection went, and it must have been understood by the court and by the plaintiff's counsel.   A general objection to the admissibility of a fact in evidence is sufficient in case the fact offered is wholly incompetent, and its incompetency could not have been obviated by other evidence; and when the mode by which the fact is offered to be established is *prima facie* incompetent under the general rules of evidence, and attention is called by an objection to the reason why the mode is illegal, it is sufficient.   The burden was on the plaintiff of proving a proper foundation for the introduction of these declarations which were *prima facie* incompetent, but this she failed to do.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed and a new trial granted, with costs to the appellant to abide the event.