# FT. SMITH OIL CO. *v.* SLOVER.

## Opinion delivered November 18, 1893.

1. *Master and servant—Risks assumed.*

   It is error to charge the jury that a servant's implied assumption of risk is confined to the particular work or class of work for which he is employed, and that if the master orders him to work temporarily in another department of the general business, where he is associated with a different class of servants, he does not assume the risks incident to that service.

2. *Duty of master towards servant.*

   An employer is liable for an injury to an employee if the circumstances were such that the employer owed it as a duty to the employee to instruct him as to the dangers of his employment, and failed to do so, and he was injured in consequence of such failure.

3. *As to who is vice-principal.*

   A foreman having power to employ, control and discharge laborers in his department is a vice-principal as regards the duty to warn such laborers of latent risks in their employment.

4. *Evidence—Declarations of agent.*

   In an action against a master to recover damages for the killing of a servant in an accident, it is not admissible to prove that defendant's superintendent said that the accident would not have happened if he had been present, that he would have stopped the machinery before allowing deceased to go where he did; such declaration being a mere expression of opinion, not part of the *res gestae*, nor an admission made while in performance of any duty as agent.

5. Res gestae—*Statements of deceased.*

   Statements of deceased, made half an hour after the injury, and after he had been carried home, in response to questions by his wife, are not part of the *res gestae*.

Appeal from Sebastian Circuit Court, Fort Smith District.

C. J. FREDERICK, Special Judge.

STATEMENT BY THE COURT.

The appellees, the widow and only son of John Slover, deceased, recovered a judgment against the appellant in the sum of $2500, damages on account of the death of said Slover caused by an injury received by him through the negligence, as the complaint alleges, of Mike Burke, the superintendant of the oil department of the appellant's cotton seed oil mill and cotton compress, which were in two distinct and separate departments in the same building, the oil department being on an upper story in a room about fifty feet long, and the compress department being in another room, on the ground floor, the two being separated by a brick wall. John Edrington was the superintendent of the compress department, Mike Burke of the oil department, both under John Mathews, the general superintendent of the oil mill and cotton compress, and each having full control in his department, with authority to hire, control and discharge hands.

In Burke's department there were two cotton seed and one meal conveyers, which extended the full length of the room, and were about eleven feet from the floor, thirteen inches from the joists, which were at right angles to them, and twenty-five inches from the ceiling or floor overhead. These joists were two feet and six inches apart. The meal conveyer was between the two seed conveyers, the top of it being on a level with the bottom of the seed conveyers. The left-hand seed conveyer was about twenty inches, and the right-hand seed conveyer about three feet and nine inches from the meal conveyer. They all were parallel, the full length of the room. These seed conveyers were metal screws nine inches in diameter, inclosed in oblong boxes about one foot across but open on the top side next the joists. Under each of these seed conveyers ran a row of four

cotton gins, the tops of the hoppers of which were connected with the seed conveyers. Over the top of the hopper of each of these gins played a board, a foot long, six or seven inches wide, three-fourths of an inch thick, with a square hole used to cut off and let on a supply of cotton seed for the gin. On the occasion of the injury a long ladder had been leaned against the top of the left hand first gin next to the entrance to the room. This ladder not quite but nearly reached the board that played over the top of the hopper.

About 12 o'clock M. on the day of the injury, the meal conveyer had choked with meal and ceased to run, and several employees were upon it, engaged in unchoking it. Burke, the superintendent and engineer of the oil department, and in charge of the machinery and business generally in that department, went from the oil department downstairs into the compress department, where Slover was employed, and whose duty it was to operate a lever that moved a hydraulic press. His duties were in this department alone. Finding Slover idle, Burke requested him to go up into the compress department and assist in unchoking the meal conveyer, giving him no directions and leaving him to do what he chose and as he chose to do it. When they went up to the oil department, Burke in front, Burke passed to the rear of the room, and through a window, on to a trapeze on the outside of the wall, to assist in unchoking the meal conveyer. He had been there but a very short time when Slover was heard to cry out, and it was discovered that his left leg was caught by the screw in the left hand seed conveyer, his right leg hanging down by its side, between it and the meal conveyer. The seed conveyers were running, but made scarcely any noise and were empty, carrying no seed. How Slover got up where he was, was matter of conjecture only. As soon as it could be done, after he was discovered caught in

the seed conveyer, the boxing of the conveyer was sawed, his leg extricated, and he was placed in a stretcher and borne by men down stairs and a block away to his home, which he reached twenty-five or thirty minutes after the accident.

The room in which he was injured had five large windows, and the day he was injured was a bright one.

Slover had assisted in building the oil mill, and, about three years and four months before the injury, was assistant engineer in the oil department, whose duty it was to oil the cotton seed conveyers by putting oil in the journals. Then there was no meal conveyer in the room, but the summer before the injury the meal conveyer and two lines of shafting had been placed in the room, which was the only change since Slover had worked there as assistant engineer.

Slover was 37 years old, a stout healthy man, and weighed about 205 pounds, was five feet and some inches in height.

Evidence tended to show that there was no regular way of approach to the meal conveyer. Some of the employees climbed up by a ladder, and some pulled up by main strength from the top of a cotton gin; there were two or three ladders in the room. It was an unusual thing, which had scarcely ever occurred, for any one to undertake to reach the meal conveyer by climbing on the seed conveyer, and it was unneccessary to do so; the seed conveyer could be easily stopped by throwing a band, by means of which in part they were operated.

Burke denied that he ordered Slover to do the temporary work outside of his employment, but said that he requested him to assist; denied that Mathews, the general superintendent, had given him authority to use and control Slover, but said he had told him he might use him if he needed him.

The appellant contends that Burke was a fellow-servant with Slover, denies negligence, and charges Slover with contributory negligence. The appellees contend that Burke, in ordering Slover from his usual employment, to do a temporary work outside of it which was attended with danger, was guilty of negligence in not instructing Slover, and in not stopping the machinery while the work was being done.

*Clendening, Read & Youmans* and *H. C. Mechem* for appellant.

1. The evidence is not sufficient to support the verdict.

2. It was error to admit Mrs. Slover's testimony of what Capt. John Mathews told her, after the accident. It was no part of the *res gestae*, and was inadmissible as an admission of an agent of defendant. Mech. Ag. sec. 714, and cases cited ; 46 Ark. 207 ; 52 N. W. Rep. 304 ; 54 *id*. 1000.

3. The evidence of Mrs. Slover as to the statement of intestate should have been excluded. It was not part of the *res gestae*.    48 Ark. 339 ; 9 Cush. 36 ; 58 Mich. 156 ; 95 N. Y. 274 ; 103 *id*. 626; 12 Or. 392; 83 Ga. 257 ; 80 Ind. 182; 28 A. & E. R. Cases, 467 ; 97 Mo. 165 ; 9 So. Rep. 577 ; 25 Pac. 876 ; 128 Ill. 545.

4. The case was tried, and the plaintiffs requested charges, upon the theory (1) that defendant was guilty of neglect in the performance of the ordinary master's duties, and (2) that Slover had been ordered out of his usual duty, and defendant was responsible for injury from whatever cause (except his own negligence) while he was performing that unusual duty. Our contention was that the jury should have been instructed as to the relative duties of master and servant, so that if they found that Slover was *ordered* into a new position, they would know what were the ordinary duties of master

and servant, for the neglect of which the action could be maintained.

5. Burke and Slover were fellow-servants. 39 Ark. 17; Wood, M. & S. ch. 16; Wharton, sec. 205; 2 Thompson on Car. ch. 20; 81 N. Y. 516; 6 Cush. 75; 112 N. Y. 614; 7 A. & E. Enc. Law, p. 839 and note 1, and 842, note 1; 2 Thomp. Neg. p. 1026; Cooley, Torts, p. 541; 3 Wood, Ry. Law, sec. 338; 25 Am. & Eng. R. Cases, 513, note; 1 N. Dak. 336; 26 Am. St. Rep. 621; 44 Ark. 524; 54 *id.* 279.

6. The second instruction for plaintiffs was error, because, (1) there was no evidence to prove that Slover was *ordered* to the lint room by Burke. But if he was, (2) there was no competent evidence that Burke had any such authority from defendant. If he had no such authority, Slover, in complying, became an ordinary servant, with no greater rights than any other employee there. (3) It does not state the law correctly. 71 Wis. 114; 79 Me. 398; 24 Fed. Rep. 906; 61 Mo. 526; 139 Mass. 580. (4) It assumed that the jury knew, or would know before the court finished instructing them, what the risks were which a servant assumed; what the doctrine of assumed risks was. And the court refused defendant's instructions defining such risks and duties. See Wood, M. & S. p. 694.

*J. B. Turner* and *Winchester & Bryant* for appellees.

1. Burke and Slover were not fellow-servants. Burke's right to employ and discharge hands at will, with personal oversight and supervision of such hands when employed, with full discretionary control of his department, made him a vice-principal as to Slover while employing hands, giving orders, or directing their execution. 16 Am. St. 372; 9 *id.* 479; 13 *id.*

243 ; 24 *id*. 722 . Wood, M. & S. secs. 445-6-8 ; 54 Ark. 302 ; 18 Fed. Rep. 866 ; 108 Ill. 228.

2. By ordering Slover on dangerous service, not usual to the rest of his ordinary employment, he became vice-principal as to that service, and was guilty of an abuse of authority for which defendant is liable. Wood, M. & S. p. 899-900 ; Cooley, Torts (2d. ed.), p. 66 ; 37 Mich. 204 ; 17 Wall. 553 ; 11 Am. Law Reg. p. 101 ; 52 Ill. 410 ; 11 R. I. 153 ; 28 Ind. 28 ; 3 Am. St. Rep. 92.

3. If we regard Slover as though he were a mere stranger, and as going to Burke's assistance at his request when he was in the discharge of that service, he and Burke were not fellow-servants. Beach, Cont. Neg. (2d ed.) p. 438-9 ; 2 Thomps. Neg. p. 1045 ; 4 Exch. 254 ; 6 *id*. 123 ; Wood, M. & S. sec. 339-340 ; 10 Q. B. 198 ; 16 C. B. (N. S.) 398 ; 54 Am. Rep. 803 ; 57 *id*. 606 ; 54 Ark. 302.

4. The evidence of Mrs. Slover as to admissions by Mathews was introduced solely to contradict him, and was admissible.

5. The statements of the intestate were part of the *res gestae*. Wharton on Ev. secs. 258, 267 ; 48 Ark. 338 ; 43 *id*. 102 ; Anderson's Dic. Law, p. 888 ; Whart. Ev. sec. 258 ; Greenl. Ev. sec. 108 ; Woods Pr. Ev. (1886) p. 424, 453 ; 20 Ark. 225.

HUGHES, J. Twenty-eight instructions were given in this case, an equal number for the plaintiff and the defendant. Sixteen asked by the defendant were refused. There was no evidence upon which to base the fourth instruction, as modified and given by the court, for the plaintiff below. The sixteenth given for the plaintiff, to the effect that the burden of proving negligence on the part of the defendant was on the plaintiffs, and of proving contributory negligence on the part of the deceased was upon the defendant, accords with the rules settled by the former decisions of this court.

Some of the other instructions are abstract, some
not explicit, some obscure, and others are based upon the
same theory as that embodied in the second given for the
plaintiff, which is the only one we feel called upon to
notice at length in this opinion, and which we find is, in
our opinion, erroneous.   It is as follows :   " The serv-
ant's implied assumption of risk is confined to the par-
ticular work or class of work for which he is employed.
There is no implied undertaking of risks, except such as
accompany, and are part of, the contract of hiring be-
tween the parties.  If the servant, by the express or
implied authority of the master, is carried beyond the
contract of hiring, he is carried away from his implied
undertaking as to risks.  If the master orders him to
work temporarily in another department of the general
business, where the work is of such a different nature
and character that it cannot be said to be within the
scope of the employment, and where he is associated
with a different class of employees, he will not, by obey-
ing such orders, assume the risks incident to that service,
or assume the risk of the negligence of such class of
employees, but would be entitled to recover, if injured
by reason of the negligence of such class of employees ;
provided he himself was not guilty of contributory neg-
ligence."

While an employer is not an insurer of the lives or
persons of his employees, he does impliedly engage that
he will not expose them to unnecessary and unreasonable
risks to life or serious bodily injury.

Negligence is defined to be "the omission to do
something which a reasonable, prudent man, guided by
those considerations which ordinarily regulate the con-
duct of human affairs, would do, or doing something
which a reasonable, prudent man would not do, under all
the circumstances surrounding and characterizing the
particular case."

1. Risks
assumed by
servant.

In the case at bar it was proper, in determining the question of negligence, that the jury should consider the age, intelligence and extent of judgment of the deceased, and the character of the service demanded of him, whether the dangers of the service were apparent or not, and whether they were such as a man of such judgment, experience and intelligence as he possessed was capable of understanding and appreciating.

In the *Union Pacific Railway Co.* v. *Fort*, 17 Wallace, 558, where a youth of inexperience was ordered to do a temporary work outside of his usual employment, and was injured in attempting to obey the order, the court said : " If the order had been given to a person of mature years, who had not engaged to do such work, although enjoined to obey the directions of his superior, it might with some plausibility be argued that he should have disobeyed it, as he must have known that its execution was attended with danger. Or at any rate, if he chose to obey, that he took upon himself the risk incident to the same." Before an employer can be held liable for an injury to an employee, while in his employ, the evidence must show in every case that the employer has neglected some duty which he owes to the employee ; and the mere fact that the employee was requested by the employer to do a temporay work outside of his ordinary employment is not a violation of a duty which he owes to his employee. If an employee, in obedience to the order of his employer, undertake to do work outside of his usual employment, without objection upon his part, and there is danger incident to performance of the work which is not apparent, or which the employee could not reasonably be expected, from lack of knowledge and experience, to understand and appreciate, and the employee's inexperience and lack of knowledge is known, or ought to be known, to the employer, then it is the duty of the employer to instruct the employee how to proceed

in the performance of the work and caution him as to the dangers incident thereto, and if the employer fail or neglect to so instruct his employee, and warn him of the danger, and the employee is injured by reason of such negligence of the employer, the employer is liable in damages for the injury thus occasioned. An employee assumes all ordinary risks within the scope of his employment, whether ordinary employment, or special employment.

If Slover, the deceased, was requested by Burke to assist in unchoking the meal conveyer, and voluntarily undertook to do so, he assumed all the risks ordinarily incident to such service.    *Cole* v. *Chicago, etc. R. Co.* 71 Wis. 114 ; *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423 ; 2 Thompson on Negligence, p. 976, sec. 7.

When he undertook to perform the service, he stood in the same relation to the appellant he would have borne had he been specially employed to do the work. *Cole,* v. *Chicago, etc. R. Co.* 71 Wis. 114 ; *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423 ; 2 Thompson on Negligence, p. 976, section 7.

If he was inexperienced and ignorant of the approaches to the meal conveyer, and the apparent approaches to the same were such as were likely to lead Slover, on account of his inexperience and ignorance, to undertake to ascend to the meal conveyer in the way he did, and the danger of ascending to it in the way he did was unknown and not apparent to him on account of such ignorance and inexperience, and Burke knew or ought to have known these facts, it was his duty to have informed Slover how to reach the meal conveyer, and to have instructed him and cautioned him sufficiently to have enabled him to comprehend the dangers, and to ascend to the meal conveyer safely by the exercise of proper care.    If the circumstances were such that the appellant owed it as a duty to Slover to instruct him, and

2. Duty of master toward servant.

it failed to do so, and Slover was injured on account of its failure to do so, the appellant was liable in damages for the injury.   But if the conditions which imposed upon the appellant the duty to instruct did not exist, there was no negligence in the failure to do so..   *Cole* v. *Chicago, etc. R. Co.* 71 Wis. 114; *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423 ; 2 Thompson on Negligence, p. 976, section 7.

In *Lothrop* v. *Fitchburg Rd.* 150 Mass. 423, it is said : ''The general rule of law is, that when the danger is obvious, and is of such a nature that it can be appreciated and understood by the servant as well as by the master, or by any one else, and where the servant has as good an opportunity as the master or as any one else of seeing what the danger is, and is permitted to do his work in his own way, and can avoid the danger by the exercise of reasonable care, the servant cannot recover, against the master, in consequence of the condition of things, which constituted the danger.   If the servant is injured, it is from his want of care.''

In *Emma Cotton Seed Oil Co.* v. *Hale*, 56 Ark. 237, it is said :   '' If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart to him by the master and does so, he thereby assumes the risks incident thereto. * * Having voluntarily accepted the place occupied by him, he cannot hold the master liable for injuries received by him because the place was not safe.   If, however, the servant, by reason of his youth and inexperience, is not aware of or does not appreciate the danger of the work he is employed to do, or the place he is employed to occupy, he does not assume the risks of his employment until the master apprises him of the danger.''

If Burke had the power to employ and discharge laborers in his department, and he was the foreman in his department, the duty of the master to instruct, if he owed that duty to Slover, devolved on Burke.

*3. As to who is vice-principal.*

The admission of the testimony of Mrs. Slover, that Capt. Mathews, the general superintendent of the company, told her that "the accident never would have happened if he had been there, that he would have stopped the machinery before he would have let him go up there," was erroneous. It was not a part of the *res gestae*. It did not tend to throw light upon or explain the accident, and did not emanate from it, and was remote from it in point of time. If this evidence was admissible to contradict Mathews, it was immaterial, because Mathews' statement was but an expression of an opinion, and if it had been desired to get his opinion as an expert, he should have been called as a witness by the appellees. It could not be used as an admission by Mathews as agent to bind the company, for it was not made by him while he was in the prosecution of the business of his agency, or while in the performance of any duty as agent. The statement of Mathews did not explain any act of agency, and accompanied no such act. *Fargason* v. *Edrington*, 49 Ark. 207; *Erie etc. Ry. Co.* v. *Smith*, 125 Pa. St. 259; Mechem on Agency, sec. 714.

*4. When agent's declaration inadmissible.*

The statements of the deceased to Mrs. Slover were made about twenty-five or thirty minutes after the injury, and after he had been extricated from the seed conveyer in which his leg was caught, and had been borne a block away, and were made in response to questions asked him by Mrs. Slover. In *Carr* v. *State*, 43 Ark. 104, it is said, in reference to statements which are part of the *res gestae*: "Nor need any such declarations be strictly coincident as to time, if they are generated by an excited feeling which extends without break or let down from the moment of the event they illustrate.

*5. Statements held not a part of res gestae.*

But they must stand in immediate causal relation to the act, and become part, either of the action immediately preceding it, or of action which it immediately precedes." It is sometimes difficult to determine when declarations should be considered as part of the *res gestae*. Here the declarations were made twenty-five or thirty minutes after the accident had happened, and after Slover had been extricated from the seed conveyer, placed upon a stretcher, and borne a block away, and the whole transaction had terminated.

Mr. Wharton, in his work on Evidence, pp. 258 and 267, says : " The *res gestae* may be defined as those circumstances, which are the undesigned incidents of particular litigated acts, and are admissible when illustrative of such acts. These incidents may be separated from the act by lapse of time more or less appreciable. Their sole distinguishing feature is that they should be necessary incidents of the litigated act ; necessary in this sense, that they are part of the immediate preparations for, or eminations from, such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to. the act, a relation not broken by individual wariness seeking to manufacture evidence for itself. Therefore, declarations which are the immediate accompaniments of an act are admissible as part of the *res gestae* ; remembering that immediateness is tested by closeness, not of time, but by causal relation as just explained." This is quoted with approval in *Little Rock, etc. R. Co.* v. *Leverett*, 48 Ark. 338, and is, we think, an accurate statement of the rule.

It appears to the court that these statements of the deceased made to his wife have no causal relation to the act they are supposed to have been intended to illustrate ; that they were not so connected with the principal fact, or such immediate emanations from it, or such immediate

accompaniments of it, as to constitute parts of the *res gestae;* and that it was error to admit them.

For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.