

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable Charles A. Tosoh
County Auditor, Dallas County
Records Building
Dallas 2, Texas

Dear Sir:

Opinion No. O-5860
Re: Extent of control to be exercised by County Auditor and County Tax Assessor Collector over Trinity River Canal & Conservancy District tax funds ordered by court to be refunded to taxpayers; and related questions.

Your letter of recent date requesting the opinion of this department on the questions stated therein, reads as follows:

"In 1933 as shown by House Bill 239, Chapter 161, at Page 313 of the Acts of the 42nd Legislature, R. S., Special Laws, there was created and established the Trinity River Canal and Conservancy District. Thereafter, purporting to act under the provisions of said law, a preliminary Board of Directors of said district caused to be levied and collected in Dallas County a tax of one cent on each $100.00 of assessed value of certain property lying within the confines of said district. The Tax Assessor and Collector of Dallas County, acting as the tax collector of said district, in the year 1935 received and collected under said tax levy the sum of $10,876.51.

"Thereafter in 1935, as shown by copy of petition hereto attached, two of the property taxpayers, for themselves and others similarly situated, brought suit in the 44th District Court of Dallas County, seeking a permanent injunction against the preliminary Directors and Tax Assessor and Collectors of said dis-

trict, enjoining them from any further attempt to demand and collect such taxes, and for the cancellation and removal from the rolls of the Assessor and Collector of Taxes of property lying within said purported district. On trial of said suit a judgment was entered by said Court, a copy of which judgment is hereto enclosed, in which the district and said tax collectors were permanently enjoined and commanded to refrain and desist from attempting to assess or collect any further taxes under said Act and particularly decreeing as follows:

> "' IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that the said Ed Cobb, as Assessor and Collector of Taxes of Dallas County, Texas, and John Bourland, as Assessor and Collector of Taxes of Tarrant County, Texas, both and each are hereby commanded to forthwith cancel the purported assessment rolls prepared by said Tax Collectors attempting to assess and collect taxes for the year 1935, in the name of said Trinity River Canal & Conservancy District, and each of said officers is ordered and directed to return and repay to any persons entitled sums heretofore received by said officers as taxes collected for said district, such return to be made by said officers in such manner as may be found most convenient and inexpensive.'

"In partial compliance with said judgment the Tax Assessor and Collector of Dallas County proceeded to pay out by check approximately $2,447.07 of the total collected. However, as of December 31, 1942, he had on hand the sum of $7,745.81, $245.73 of which amount he has deposited in the bank subject to his exclusive check and control and $7,500.00 of which he is keeping in cash in his hands in his office.

"The records of disbursements show that during the year 1939 there was repaid to the taxpayers who paid the tax, the sum of $248.09; during the year 1940 there was repaid the sum of $200.70; during the year 1941 there was repaid the sum of $209.56; and during the year 1942 there was repaid the sum of $25.28. Considerable publicity has been given to the above suit, and the judgment of the Court, decreeing the return of said money, but I am not advised that each and every taxpayer who paid said taxes has been notified that he is entitled to a return thereof.

Inasmuch as the tax was only one cent on a $100.00 of assessed value of property the taxpayers who have not been refunded this amount have sums due them, ranging from one cent to less than one dollar, and the Tax Assessor and Collector of Dallas County takes the position that the 'manner most convenient and inexpensive' is to have the property owners call in person for this tax.

"The Tax Assessor and Collector of Dallas County contends that these funds do not belong to the County of Dallas, but belong to the individuals who paid same in and that since he is under order of the District Court to return said funds to the taxpayers in the manner found to be most convenient and inexpensive, that I as County Auditor of Dallas County have no concern or jurisdiction over same in law. I am, therefore, prompted to ask your opinion on the following questions:

"1.

"As County Auditor of Dallas County, Texas (Dallas County having a population in excess of 190,000) under the provisions of Article 1656a (Acts of 1933, 43rd Legis. R. S., Page 217, Chapter 98, as amended by Acts of 1935, 44th Legislature, Page 330, Chapter 122, Paragraph 1), do I have the power and authority to require the Tax Assessor and Collector of Dallas County to deposit the taxes collected by him for said Trinity River Canal & Conservancy District in the duly selected County Depository?

"2.

"If the balance of said unrefunded taxes is so deposited, does the Tax Assessor and Collector have the right to withdraw same on his personal check and hold same or any part thereof in cash in his office?

"3.

Do I have the right as County Auditor
to require said money to be deposited and
paid to the Treasurer or to persons, firms
or corporations to whom said funds may be-
long only by check counter-signed by me?

"4.

"If it is your opinion that under the
provisions of Article 1656a (Acts 1933, 43rd
Legisl. Page 217, Chapter 98, as amended Acts
1935, 44th Legis. Page 330, Chapter 122, Par.
1) applies to the funds in question and re-
quires same to be deposited in the County
Treasury, in the event the Tax Assessor and
Collector refuses to comply with my demand
that said funds be so deposited in the County
Treasury and disbursed only in accordance with
the provisions of Article 1656a, what specific
'steps at the expense of the County' am I au-
thorized as County Auditor to take to compel
his compliance with said law?  Particularly,
will a writ of mandamus lie in suit brought by
me or in the name of the County to compel such
compliance?

"5.

"I would also like to direct your attention
to the provisions of Article 106 of the Penal
Code and to ask your opinion as to whether or
not the Tax Assessor and Collector is required
by law to pay the balance of these Trinity River
Canal & Conservancy District taxes to the County
Treasurer, inasmuch as these funds have been
collected and received by him and not paid over
to the persons entitled thereto for a period of
more than four years since the time the Tax As-
sessor and Collector collected and received said
monies.  In this connection I beg to advise that
the present Tax Assessor and Collector has com-
pleted and been re-elected to several terms
since his original collection and receipt of

these taxes.

"6.

"I would like to ask further, whether or
not in your opinion, these unrefunded taxes are
protected by the bonds regularly posted by the Tax
Assessor and Collector under the provisions of Arti-
cle 7247 and 7249.

"7.

"If it is your opinion that the above
referred to Article 1656a does not apply to the
monies in question and that likewise Article 106
of the Penal Code is inapplicable, does the 44th
District Court of Dallas County which entered the
original judgment in 1935, directing the repayment
of said monies to the various taxpayers who paid
same in, still have jurisdiction in said original
case to order the Tax Assessor and Collector to
deposit in the registry of the Court a balance of
said monies still on hand and unrefunded?   If
said Court has not jurisdiction because of the suit
filed in 1935, could said Court or any other District
Court now impound said funds and order same deposited
in the registry of the Court in suit by me as County
Auditor?

"*  *  *"

Article 1656a, Vernon's Annotated Civil Statutes,
provides:

"The County Auditor in counties having a
population of one hundred ninety thousand (190,000)
or more according to the last preceding or any fu-
ture Federal Census shall prescribe the system of
accounting for the county and the forms to be used
by the District Clerk, the District Attorney and
all county and precinct officers and by all persons

in the collection and disbursement of county revenues, funds, fees, and all other moneys collected in an official capacity whether belonging to the county, its subdivisions or precincts, or to, or for the use or benefit of, any person, firm, or corporation; he shall prescribe the mode and manner in which the District Clerk, the District Attorney and all county and precinct officers shall keep their accounts, and he shall have the power to require all officers to furnish monthly, annual, or other reports under oath of all moneys, taxes, or fees of every nature received, disbursed, or remaining on hand; and in connection with such reports he shall have the right to count the cash on hand with such officer, or to verify the amount on deposit in the bank in which such officer may have placed the same for safekeeping. He shall have the power to adopt and enforce such regulations, not inconsistent with the Constitution and laws as he may deem essential to the speedy and proper collection and checking of, and accounting for, the revenues and other funds and fees belonging to the county or to any person, firm, or corporation for whom any of said officers may have made collections, or for whose use or benefit they may have received or may hold such funds. All of the fees, commissions, funds, and moneys herein referred to shall be turned over to the County Treasurer by such officer as collected, and such money shall be deposited in the county depository in a special fund to the credit of such officer and draw interest for the benefit of the county, which funds, when so deposited in such depository, shall be secured by the bond of such depository. Thereafter the officer may draw checks on the County Treasurer to disburse said funds in the payment of salaries and expenses authorized by law or in payment to the county or to the persons, firms, or corporations to whom said funds may belong. The Treasurer and the depository shall make no payment unless such check is countersigned by the County Auditor. The deposit of funds in the County Treasury shall not in any wise change the ownership of any fund so deposited except to indemnify said officer and his bondsmen or other owners of such funds for such funds during the period of deposit with the county. At the close of any fiscal year or accounting period now or hereafter fixed by law, the County Auditor shall audit, adjust, and settle the accounts of such officer. In the event the County Auditor shall be unable to obtain proper reports or an adequate accounting from any District Attorney, District Clerk, county or precinct officer as herein provided, either during or after his term of office, the County Auditor shall have authority to enforce an accounting thereof, and to take such steps at the expense of the

county as are necessary in his judgment to protect the interests of the county or of the persons, firms or corporations entitled to such funds."

In answer to your first question, you are respectfully advised that it is the opinion of this department that under the express provisions of Article 1656a, supra, it is the duty of the Tax Assessor-Collector to turn over to the County Treasury all the funds here involved to be deposited in the County Depository in a special fund to the credit of the Tax Assessor-Collector. When such funds are so deposited in the depository they are secured by the bond of the depository. Thereafter, the County Tax Assessor-Collector can draw checks on the County Treasurer to disburse said funds to the persons, firms or corporations to whom said funds legally belong. The Treasury and depository shall make no payment unless such checks are countersigned by the County Auditor. It should be borne in mind that the deposit of said funds in the County Treasury shall not in any wise change the ownership of any funds so deposited except to indemnify said officer and his bondsmen or other owners of such funds for such funds during the period of deposity with the county.

In view of what has been said in answer to your first question, it necessarily follows that your second question should be answered in the negative and is so answered.

In reply to your third question, you are respectfully advised that it is the opinion of this department that the County Auditor is required by Article 1656a, supra, to have the funds herein referred to, turned over to the County Treasurer and such funds shall be deposited with the County Depository in a special fund to the credit of the County Tax Assessor-Collector. Thereafter, the County Tax Assessor-Collector may draw checks on the County Treasury to disburse said funds in payment to the persons, firms, or corporations to whom said funds may legally belong. However, the Treasury and the depository shall make no payment unless such check or checks are countersigned by the County Auditor. It is our further opinion that the deposit of the funds here involved with the County Treasury and County depository will in no wise affect the County Tax Assessor-Collector in complying with the judgment mentioned in your letter. Stated another way, the County Tax Assessor-Collector can legally discharge the duties imposed upon him by said judgment by complying with the express provisions of Article 1656a, supra, which is to say he can legally disburse said funds to the persons, firms or corporations to whom said funds legally belong by drawing a check on the

County Treasury signed by himself and countersigned by the County Auditor.

In reply to your fourth question, you are advised that it is our opinion that there is a positive official duty enjoined by law upon the County Tax Assessor-Collector to deposit the funds in question with the County Treasurer, who in turn will deposit said funds with the County Depository and where a positive official duty is enjoined by law upon an officer, mandamus is a proper remedy to compel him to perform the act in the manner required by law. (See Jefferson v. McFadden, 178 S. W. 714)

Generally speaking, a writ of mandamus lies against a public officer to compel the performance of a ministerial duty imposed by law, not involving an exercise of judgment or discretion which he has failed or refused to perform. Stated another way, mandamus lies to enforce the performance of a non-discretionary act or duty. The writ will issue only when the act or duty is ministerial in character and it is not available to control or review the action of an official or board upon matters involving the exercise of discretion or judgment. Otherwise stated, the writ will not issue against the public officer except to compel the performance of an act clearly defined and enjoined by law, and which is therefore ministerial in its nature, and which neither involves any discretion or leaves any alternative. (DEPoyster v. Baker, 34 S. W. 106; Lacy v. State Banking Board, 11 S. W. (2d) 496; Tex. Jur., Vol. 28, p. 338 and authorities therein cited) In the event the County Tax Assessor-Collector fails to comply with the express provisions of Article 1656a, supra, a writ of mandamus lies against such officer to compel the performance of the ministerial duties imposed upon him by Article 1656a.

With reference to your fifth question, we have carefully considered Article 106 of Vernon's Annotated Penal Code and the case of Turner, et al v. Willacy County, 58 S. W. (2d) 12, and it is our opinion that said Article 106 mentioned in your fifth question has no application to the questions under consideration.

In reply to your sixth question, you are respectfully adivsed that after carefully considering Article 7247 and Article 7249, Vernon's Annotated Civil Statutes, it is our opinion that the unrefunded taxes here involved are protected by the bonds of the County Tax Assessor-Collector.

We now consider your seventh question. In view of our answers to your first six questions, we do not deem it necessary to discuss your seventh question. Inasmuch as the Tax Assessor-Collector received and collected the funds in question in an official capacity and by virtue of his office, and since at the time of the collection of said funds, Dallas County was and is operating under the County Depository Act and also Article 1656a was in effect in Dallas County, these funds so collected at all times after being received and collected by the Tax Assessor-Collector of Dallas County should have been deposited with the County Treasurer in a special fund to the credit of such officer, and if so deposited, such officer would have been at all times duly authorized to draw checks, to be countersigned by the County Auditor, in payment to the persons, firms or corporations to whom such funds legally belonged. As heretofore stated, it is our opinion that the balance of these funds now on hand, under the existing statute, should be deposited in the County Depository of Dallas County by the County Treasurer after the same have been turned over to him by the Tax Assessor-Collector in an official account from which said funds cannot be drawn except by check countersigned by the County Auditor.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant

APPROVED MAR 21, 1944

_Grover Sellers_

ATTORNEY GENERAL OF TEXAS

AW:EP

