J. P. HESSER AND FERDINAND WESTHEIMER, EUGENE WESTHEIMER, MORRIS F. WESTHEIMER, LEE F. WESTHEIMER AND HENRY WESTHEIMER, *partners under the name of* FERDINAND WESTHEIMER & SONS v. W. H. JOHNSON.

(Filed September 9, 1903.)

1. JUSTICE OF PEACE—Appeal From. Where an action is appealed from a justice of the peace to the district court, the district court takes merely appellate jurisdiction, and no original jurisdiction, and can hear and determine the case only as a case within the jurisdiction of a justice of the peace.

2. ACTION IN TORT—Jurisdiction of Court. Where a tort is committed by the taking at one time of several chattels, it gives but one cause of action, and the plaintiff cannot be allowed to split it and bring separate suits for separate articles. So where a sheriff having in his hands an execution makes a wrongful levy upon the property of a person not named in the execution, and by one and the same levy takes several articles of personal property at different places, and with a slight variation in time, but where all are made on the same day, and as part of the same levy and all included in one return, such taking constitutes but one cause of action,

and a party cannot split such cause of action so as to confer jurisdiction upon a court where the entire value of the property would exceed the jurisdiction of such court.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before Jno. H. Burford, Trial Judge.*

*F. C. Hunt* and *Fulton & Bush,* for plaintiffs in error.

*Lowry & Workman,* for defendant in error.

### STATEMENT OF FACTS.

On the first day of January, 1902, the defendant in error, as plaintiff, filed simultaneously, in justice court, two suits, and filed two bills of particulars, against the plaintiff in error, J. P. Hesser, as defendant. One of said actions being for the recovery of one hundred dollars, for the alleged conversion of liquors and cigars seized by the defendant as sheriff, at the home of the plaintiff, under an execution issued in a judgment obtained by Ferdinand Westheimer and Sons against R. J. Bost, and the other action being for the recovery of eighty dollars, for the conversion of a barrel of whisky seized on the same day, at the cold storage room of F. M. Stallard, under the same execution. The defendant answered in each case alleging a fraudulent transfer from Bost to Johnson, and also plead as a bar and to the jurisdiction of the court that a single cause of action had been split by the plaintiff, for the purpose of conferring jurisdiction upon the justice, and wrongfully harassing the defendant with a multiplicity of suits. Both actions were appealed by the defendant to the district court, and were numbered 1210 and 1219 respectively. On the 27th day of May, 1902, the plea in bar and to the jurisdiction of the court in both cases was

tried by the court upon the following stipulation filed in each case, the court finding against the defendant. The stipulation is as follows:

### NO. 1209. STIPULATION.

"It is agreed by the parties to this case that the following is a statement of facts upon which the plea in bar is brought before the court:

"It is agreed that on the 23rd day of December, 1901, Ferdinand Westheimer, John F. Westheimer, Morris F. Westheimer, Lee Westheimer, and Henry F. Westheimer, partners, doing business under the firm name of Ferdinand Westheimer and Sons, duly obtained a judgment in the probate court, of Payne county, Oklahoma, for the sum of $274.10, against R. J. Bost, Charles Vickers, and James Richey, partners, doing business under the firm name of R. J. Bost and Company, and which judgment was wholly unpaid at the time of the levy of the execution hereinafter mentioned.

"It is further agreed that on the 31st day of December, 1901, an execution was duly issued upon said judgment out of said court, and delivered to the sheriff of Payne county for satisfaction, that the sheriff proceeded under said execution, on the 31st day of December, 1901, in company with the under-sheriff, Fred Oschman, procured a dray and went to the residence of the plaintiff, in Stillwater, Oklahoma, on South Main street, for the purpose of levying upon property then in the possession of the plaintiff, as the property of the defendant, R. J. Bost. That the sheriff and the under-sheriff there levied upon the property described in plaintiff's bill of particulars in this case, No. 1209, that he immediately loaded the property in the dray, and hauled the same to a store-room on South Main street, belonging to Dale Lytton, and unloaded said goods there. Immediately thereafter the sheriff and the under-sheriff proceeded with said levy and went to the cold storage room belonging to Fred M. Stallard, located on East Ninth avenue, and there levied upon one bar-

rel of Queen Ann whiskey, the same being the whiskey described in plaintiff's bill of particulars, in cause No. 1210 in this court. That the said sheriff and his under-sheriff, immediately hauled said barrel of whiskey to the same storage room where he had left the other property, and there left the said barrel of whiskey. That the entire time consumed in levying upon all the property did not occupy to exceed one hour.

"It is admitted that the residence of the plaintiff is about three blocks from the cold storage house mentioned.

"That on the 31st day of January, 1902, the sheriff duly returned the execution issued into the court from which it was issued, showing the levy upon all of the property described in the plaintiff's two bills of particulars and as having been on the said 31st day of December, 1901.

"It is further admitted that from the time of the commencement to make the levy by the sheriff and the deputy aforesaid, they were engaged exclusively in the making of said levy until the last of the property was hauled to the store room mentioned.

"It is also admitted that at the same day, and as a part of the same transaction, other property belonging to or alleged to belong to the defendant R. J. Bost, was levied upon by the sheriff and his under-sheriff at one or two other places in the city of Stillwater, and said other property was also taken to the same store room, and it was also included in the return of the sheriff on the said execution.

"It is further admitted by the parties that on the 1st day of January, 1902, the plaintiff filed simultaneously in the justice court of J. M. Springer, justice of the peace, in and for the city of Stillwater, Payne county, Oklahoma, two separate actions for the conversion of the property described in plaintiff's bill of particulars, filed in said actions, said actions being numbered 122 and 123 respectively, and actions corresponding to actions Nos. 1210 and 1209 respectively, cause No. 122 in the justice court, being No. 1210 in this court,

and cause No. 123 in justice court, being No. 1209 in this court.

"It is further admitted that on the 24th day of February, 1902, the plaintiff recovered judgment on said cause No. 122, in the justice court of B. F. Brown, justice of the peace of the city of Stillwater, Payne county, Oklahoma Territory, to which court said two causes had been taken by affidavit for change of venue, that said judgment recovered was for the sum of $100.00 and costs, that judgment was rendered in cause No. 123, in justice court on the said 24th day of February, 1902, for $100.00 and costs of action.

"It is also stipulated that all of the pleadings in both of said causes of action in justice court are in evidence in this case.

"It is further admitted that the parties to both of said actions in the justice court were identical and that the seizure and taking of the possession of the goods, at the house of the plaintiff, and the seizure and taking of the possession of the barrel of whiskey at the cold storage room, under said execution, constitute the alleged conversion complained of by the plaintiff.

"LOWRY AND WORKMAN,
"Attorneys for plaintiff.
"F. C. HUNT,
"Attorney for defendant."

On the 27th day of May, cause 1210 was tried before a jury, upon the issue of fraudulent conveyance, and on the 26th day of September, 1902, cause 1209 was also tried by a jury upon the same issue, plaintiff recovering in both cases. To the action of the court in finding in favor of plaintiff and against defendant, on the plea in bar and to the jurisdiction of the court, on the stipulation of facts as herein set forth, plaintiff in error excepts, and brings the cause here for review.

Opinion of the court by

IRWIN, J.: It is contended by the plaintiffs in error, that under the terms of the stipulation which was signed by the parties and filed in court, and upon which the plea in bar and to the jurisdiction of the court was tried, as a legal proposition, the plaintiff had but a single cause of action, for which he sought to recover in an amount beyond the jurisdiction of the justice court, and for the express purpose of harassing the defendant with a multiplicity of suits, and attempting to confer jurisdiction which the court did not have. This is the only error relied upon by plaintiff in error for a reversal of this case, and the only one necessary for this court to consider. The rule is well established that the district court in trying a case upon appeal from a justice has only the jurisdiction of the justice. This doctrine has been held by the supreme court of Kansas, in the case of *Wagstaff v. Challiss,* 31 Kans. 212; *Ball v. Biggam,* 43 Kans. 327; *Brandenberg v. The Indianapolis, Pittsburg and Cleveland Railway Company,* 53 Kans. 247; and by the Indiana supreme court in the 13th Ind. 103.

We take it that this doctrine is elementary, and so well understood that it requires no citation of authorities to establish it. Then the decision turns upon the sole question, do the facts as stated in the stipulation on file constitute one cause of action, or, is it such a state of facts as will warrant the bringing of two or more different suits? It must be borne in mind that this action by its terms, or these actions by their terms, are brought for the wrongful conversion of personal property. The gist of the action was not the specific and separate articles of property levied upon, but was an

action for the value of the property seized by the sheriff under the execution.

The stipulation shows that this execution was the only execution issued on the judgment. That the levy was made the same day, the same hour, and that all of the property taken was included in one return. That the property taken is all claimed by the same person, as having been taken wrongfully by the same parties. The question, it seems to us, is: Could the plaintiff, in the court below, have obtained in one action the full measure of relief to which he was entitled? It is against the policy of the law to permit the splitting of causes of action so as to bring separate actions, where one action would suffice. The law is not in favor of prosecuting an action by piece-meal, or to present only a portion of the grounds on which relief is sought, and leave the rest for a second suit if the first fails. If this were not the rule, there would be no end to litigation.

The supreme court of Kansas in the case of *Wichita W. R. Co. v. Beebe et al.* reported in the 18 Pac. 502, say:

"An entire claim arising from a single wrong cannot be divided and made the subject of several suits, however numerous the items of damage may be. A judgment upon the merits of any part will be available as a bar in other actions arising from the same cause."

And in the opinion written by Judge Holt, the court says:

"We believe the law to be well settled that no party is permitted to split his causes of action into different suits. If he does and obtains judgment upon any part, such judgment is a complete bar to a recovery upon any remaining portion thereof. The splitting up of claims is not permitted in the case of contracts, and the same rule which prevents a party from doing so applies with equal force to actions

arising in tort, and the same act cannot be the foundation for another suit, although the items of damage may be different."

Further on in the opinion the court say:

"In case of torts each trespass or conversion or fraud gives a right of action, and but a single one, however numerous the items of wrong or damage may be."

Further on this same court says:

"It is for the public good that there be an end to litigation."

The court in support of the opinion there rendered cites the following authorities: *Folsom v. Clemence,* 119 Mass. 473; *Hemstead v. Des Moines,* 63 Iowa, 36, 18 N. W. Rep. 676; *Herriter v. Porter,* 23 Cal. 385; *Morey v. King,* 51 Vt. 383; *Milroy v. Mining Company,* 43 Mich. 231, 5 N. W. 287; *Memmer v. Carey,* 30 Minn. 458, 15 N. W. Rep. 877; *Railroad Co. v. Henlien,* 56 Ala. 368; 1 Herm. Estop. 247, 248, 251.

In the case of *Thisler v. Miller,* in the supreme court of Kansas, reported in the 36 Pac. page 1060, the court says:

"The plaintiff claimed to be the owner and entitled to the possession of all of the animals seized by the sheriff. If all the animals were taken by the sheriff at the same time, and upon the same writ, and if the plaintiff was the owner and entitled to the possession of all of them, the wrongful detention of the sheriff constituted a single wrong, as against plaintiff and only a single action was necessary. There is as much reason for dividing the wrong and bringing thirty-three actions as there is in splitting it into two, as was done by the plaintiff. The law does not favor a multiplicity of suits, and, where all the matters in controversy between the parties may fairly be included in one action, the law requires it should be done. If the plaintiff was the owner and entitled to the possession of the several animals, and they were

seized at one time, it gives him but one cause of action, and he cannot be allowed to split it up, and bring separate suits for the different animals."

Now it seems to us that if the names of the parties were changed, and the animals described in these cases were barrels of whiskey, as in the case at bar, the cases would be identical, as we do not think it can reasonably be said that because there was a difference in the time of the levy, of less than one hour, and that the levies were made at places distant not to exceed three blocks, that they were all the result of one continuous levy and all included in one return, that it was not all one and the same act; as, applying the reasoning of the Kansas supreme court, "Where all the matters in controversy between the parties may be fairly included in one action, the law requires that it shall be done."

Now we can see nothing that would prevent this plaintiff from obtaining full, ample and complete satisfaction for all damages sustained by the wrongful conversion by bringing the same all in one action, in a court of competent jurisdiction; and if he could do this, then, under the law, it was his duty so to do, and he would have no legal right to divide such cause of action into two, three, five or a dozen actions, as against the same defendant.

Bliss on Code Pleadings, which is an authority cited by counsel for defendant in error, to sustain their contention, it seems to us, is an authority clearly in point for the plaintiff. Section 118, in speaking of splitting cause of actions, says:

"In the case of torts, each trespass, or conversion or fraud, gives a right of action, and but a single one, however numerous the items of wrong or damage may be."

The same author in the same section says:

"Logically every wrong furnishes itself a cause of action, but different wrongs may be so blended as to be called a single wrong, as to furnish but a single cause of action, especially with reference to the policy of the law which discourages a multiplicity of suits."

A distinguished common law judge in New York says:

"All damages arising from a single wrong, though at different times, makes but one cause of action; and all debts and demands already due by the same contract, make one entire cause of action."

The supreme court of Kansas in the case of *McDowell v. Gibson,* 50 Pac. 870, says:

"In an action against a sheriff for the recovery of property taken under an execution, and replevied by the plaintiff in such action, the sheriff is not only the actual, but the real, party defendant, where the judgment creditor makes no application to be made party defendant and is not substituted as the defendant. Where the court has full jurisdiction of the parties and the subject matter of two actions of replevin for the recovery of certain animals, and the parties are identical, and the evidence to support both cases is the same, and the issues in the cases are precisely alike, except that the petitions refer to different animals, a judgment in the first case is conclusive between the parties, not only as to that case but also as to the second."

In the case of *Harris v. Avery,* reported in the 5th Kans. at page 85, Judge Valentine, in discussing the features of the Kansas code, which are in all respects similar to ours, uses this language:

"Our code has abolished all the common law forms of action and has established a system for the joinder of actions, more philosophical and complete within itself. It follows the rules of equity more closely than it does those of the common law, one object seeming to be to avoid the multiplicity of suits, and to settle in one action, as equity did,

as far as practicable, the whole subject-matter of a controversy. Hence the common law on this question is no criterion. It is probably true that two causes of action for false imprisonment and slander cannot, under our code be united, unless both arise out of the same transaction, one being an injury to the person, and the other being an injury to the character; but we do not know of any reason why they should not be united when both do arise out of the same transaction."

Maxwell in his Code Pleading, section 344 says:

"The word transaction has no technical meaning, and the courts should construe it liberally, as evidently it was intended to be by the framers of the code. The words transaction or subject of the action evidently were intended to comprise all that transpired at a given time, or was connected with the subject of the action."

In the case of *Madden v. Smith*, 28 Kans. 570, in a decision of the Kansas supreme court, rendered by Judge Brewer, it is said:

"Where there is but a single and indivisible contract, only one action can be maintained for a breach thereof, and after such action the plaintiff cannot maintain a second on the ground that he did not recover in the first all the damages he in fact sustained in consequence of the breach. The same rule obtains although the contract contains several items; as where it is for the sale of a bill of goods, or the doing of several pieces of work, providing only that the contract of the promiser is single and entire, and to pay for the goods or work as a whole."

In the same decision the court says:

"A recovery in trespass or trover for one of several chattels carried off or converted at the same time, or for any other indivisible act or wrong, will accordingly be a bar to a subsequent action for the others."

In support of this doctrine they cite: *Farrington v.*

*Payne,* 15 Johns. 432; *Phillips v. Berick,* 16 Johns. 136; *Cunningham v. Harris,* 5 Cal. 81; *Cracraft v. Cochran,* 16 Iowa 301, 304; *Veghte v. Hoagland,* 29 N. J. Law, 125.

The court also says:

"A vendor who sells goods at the same time and place, to the same person, cannot multiply costs by bringing as many suits as there are parcels, but must include the whole in one action, even when they are delivered at different periods." (*Smith v. Jones,* 15 Johns 299.)

In the case of *Proctor v. Southern Cal. Railway Co.* reported in 62 Pac. page 306, the supreme court of California say:

"An allegation of a number of injuries as grounds for the recovery of damages, all arising from a single wrongful act of the defendant, does not constitute separate causes of action, so as to render a complaint subject to demurrer for misjoinder."

In the case of *Brandenberg v. Railroad Company,* 13 Ind. 103, the supreme court of that state say:

"In cases of tort the question as to the number of causes of action which the same person may have, turns upon the number of torts, not upon the number of different pieces of property which may have been injured."

In the case of *Bolen Coal Co. v. Whittaker Brick Co.,* 35 Pac. 810, the Kansas supreme court, speaking through Judge Johnston, say:

"It is the policy of the law to avoid a multiplicity of actions, and a party is not permitted to split a cause of action into two or more parts and maintain separate actions for each of the separate parts. A recovery of one part of an action so split up will constitute a complete bar to a recovery upon any remaining portion thereof. The principle of indivisibility applies to running accounts, like the one under consideration, and if the plaintiff could split this account

into two causes of action, he might bring as many actions as there are items in the account. The doctrine of *res adjudicata* forbids a repetition of vexatious law suits and a former trial and judgment upon one of the items is conclusive between the same parties as to all matters which were or might have been litigated in all other actions, whether commenced before or after the action in which the adjudication was made."

In the case of *Wilson v. Sullivan,* 53 Pac. 994, the Utah supreme court say:

"The defendant filed his demurrer to said complaint and, among other grounds, alleged that the several causes of action are improperly joined, and not separately stated. It is plain that the subject matter of the action was for a tort arising out of certain wrongful continuous official acts of the defendant as sheriff, whereby the rights of the plaintiff were injuriously affected. The wrongful acts are set forth with some particularity, and the damages resulting therefrom are separately stated as arising from a breach of official duty. These acts are all connected as being one continuous, tortuous act, and all arising out of the same kind of action, and connected with the same subject of action, and are stated in ordinary and concise language. In serving a writ of attachment which directs the taking of property of a particular person, an officer acts officially. In the taking of property of a person not named in the writ, the sheriff was guilty of a breach of official duty, and such act was wrongful, although it was an attempt to perform an official duty. When an officer acts thus wrongfully, the act is official, and he is liable for such wrongful act. Counting as the complaint does upon official acts, resulting in injury to the plaintiff simplifies the procedure without violating its rules, and reaches substantial rights without resorting to a multiplicity of suits for their redress."

It has been held: That upon a single count in trover the plaintiff may recover the value of several articles taken

and converted by the defendant at several distinct times and places.    (21 Ency. P. and P. 1034.)

In the case of *Skeep v. Springfield Engine Co.* 42 Mo. Appeals, 158, it was said by that court:

"The plaintiff who had purchased a chattel and given several notes in payment therefor before either of the notes had become due, elected to rescind the contract of sale for breach of warranty, and demanded that the notes be delivered up. It was held that the plaintiff could not split up his demands, and bring a separate action of trover for the conversion of each note, and that the judgment recovered in an action for the conversion of the first and fourth notes was a bar to an action for the conversion of the second and third notes."

"The rule as to torts and contracts is the same. If either arise out of the same transaction, there is but one cause of action." (Maxwell's Code Pleadings, section 344, citing in support of that doctrine, *Bendernagle v. Cocks* [N. Y.] 19 Wend. 207.)

In the case of *Dutton v. Shaw,* 35 Mich. 431, the supreme court of Michigan say:

"The principle which prevents the splitting up of causes of action, and forbids double vexation for the same thing, is a rule of justice, and not to be classed among technicalities. It was intended to suppress serious grievance."

In *Damon v. Denny,* 54 Conn. 253, the supreme court say:

"Where a pending suit is one in which it is legally possible for a judgment to be rendered upon a cause of action alleged in a second, and was brought for the purpose of obtaining such a judgment, the plaintiff is bound to exhaust all the possibilities of that suit, before subjecting the defendant to the costs of a second suit.

"If two suits be instituted at the same time, by the same plaintiff, against the same defendant, on the same cause of action, the pendency of each   *   *   *   may be pleaded in

abatement of the other." (*Dengler v. Hays,* 42 Atlantic, 775.)

*Tootle et al. v. Kent et al.,* decided by our own supreme court at the present term, June 9, 1903, this court says:

"A single and entire cause of action cannot be divided into several claims, and separate actions maintained thereon."

Many cases have been cited by counsel for defendant in error, in support of their contention of the divisibility of the action, but we think an examination of those cases will show that they are controlled by peculiar features and circumstances which take them outside of the general rule, and in which they differ from the case at bar. The case cited of *Carson v. McCormick Harvesting Machine Company,* 18 Texas Civil Appeals, 225 , is a case where a seizure was made under different executions, and was on different judgments, which disinguishes that case from the case at bar. *Puckett v. St. Louis, Iron Mt. & Southern Railway Company,* 25 Mo. Appeals, 650, was where a cow and steers were killed at one time, and a hog was killed a few days before, being two separate and distinct transactions, not governed by the same evidence, or growing out of the same transaction. The case of *Wheeler v. Wallace,* a Michigan case, 19 N. W. 37 was a case where farm implements and growing crops were levied upon and sold. There it was held that the owner was not compelled to consolidate both grievances into one action, but might sue in trover upon the same separately. In this case there were two separate sales, though but one levy, and the sales were made the basis of the action and conversion. The decision says:

"The sale was in August, 1882, and this suit was brought in September, 1882. These executions which were on sev-

eral judgments, were levied at the same time on a considerable amount of personal property, which was sold in January, 1882. After defendant had sold enough to make up the full amount of the executions and costs, he went further and sold the remainder, realizing between two and three hundred dollars, surplus. All this money he kept in his own custody, and neither paid it to creditors nor endorsed it on the writs."

The gist of the case is really the two separate sales, the court saying:

"Plaintiff had a right to treat the sale in each case as a conversion, and was not compellable, whether allowable or not, to treat the original levy as the one conversion on which he sought to recover. As there could be no great damage on a mere levy on growing crops, which might never pass to a sale, it was wise to postpone action until something was done, which would fix real and ascertainable damages. We do not think there is any legal principle which requires these separate grievances to be consolidated into one action. The plaintiff had a right to prosecute for the two sales separate, and the case was improperly taken from the jury."

Also the fact of the excessive sale seems to have entered largely into the decision, which further says:

"The court below seems to have overlooked a principle relating to acts in wrong of creditors which was of considerable importance. While transactions of sale or other arrangements to their prejudice may be bad as to creditors, they are nevertheless valid as to the parties; and when enough property has been raised to satisfy the claims of creditors, any other needless disposition of the balance is not justified and is a grievance against the vendee, who, as to such surplus is the lawful owner."

And in the case of *Smith v. Auld*, 31 Kans, 236, that case turned upon the point that a second suit was not barred for the reason that said claim had in a prior suit affected

only some of the parties, and was not therefore determinable in that action.

In the *A. T. & S. F. R. R. Co. v. Home Ins. Co.* 53 Pac. 458, the railway company contended that the insurance company had split a single cause of action, but was ruled against on the grounds that the insured was subrogated in equity to the rights of the assured; that if there had been a splitting of a single cause of action, it was waived by the agreement between the railway company and the insured, and not simply that the doctrine against the indivisibility of causes of action for tort did not apply.

*White v. Mosely,* 8 Pickens, Mass. 356. In this case was involved an injury to plaintiff's dam, and a subsequent distinct trespass upon plaintiff's property. Held to be separate trespass.

*Wheeler v. Wallace,* (Mich) 19 N. Y. 37, was a case which involved two separate, distinct sales, on several different, distinct executions; thus was it distinguished from the case at bar.

The only remaining case cited by counsel for defendant in error, and we think the strongest case cited by them, is the case of the *Mo. Pac. Ry. Co. v. Scannon,* 41 Kans. 521. This case has this distinguishing feature in it which we think removes it from the general rule. In this case, it was an action brought against a railroad company for killing two animals, one a colt and the other a mare. They were killed at a point several rods distant from each other, and the supreme court there held that two actions might be brought, sustaining such holding, upon the theory that there might have been negligence on the part of the company in the killing of one animal and not in the killing of the other, and for the fur-

ther reason that at the time of the commencement of the suit for the killing of the colt, the mare was not dead, and didn't die until subsequently, and for this reason the amount of the damages for the killing of the mare, could not be accurately determined at the time of the commencement of the first action, and consequently was not included in such action. So it will be seen that all of the citations of authority on the part of the defendant in error have different features, and are decided upon different facts than exist in the case at bar. It seems to us that in the case at bar the plaintiff's right of action was for the wrongful conversion of his property taken by the sheriff under the levy of the execution, and that each particular article of property taken was not an entire cause of action, but that all of the property so taken and converted, if done as one continuous levy, was the wrong complained of, and we can see no reason why the entire relief sought could not have been obtained by one action against the sheriff for the wrongful conversion. If this could have been done, then, as a matter of law, it was the duty of the plaintiff to have done so, and avoided the necessity for a multiplicity of law suits. His not having so proceeded, but having wrongfully divided his action into two separate suits, so as to bring it within the jurisdiction of the justice, was wrongful, and the justice obtained no jurisdiction thereby, as the amount involved was beyond the jurisdiction of the justice; and the justice having no jurisdiction, the district court on appeal, could obtain none.

For these reasons we think that the plea in bar and to the jurisdiction of the court should have been sustained by the district court, and it was error not to have done so. The judgment of the district court is hereby reversed and remand-

ed with directions to sustain the plea in bar, and to the jurisdiction of the court.

Burford, C. J., who presided in the court below, and Justice Pancoast who decided the motion to the jurisdiction of the court and in bar, in the court below, not sitting, and Gillette J., absent; all the other Justices concurring.