## JOHN MILLIGAN VS. TERRITORY OF OKLAHOMA.

1. Where the trial court, after an examination touching the competency of a witness under the age of ten years, permits such witness to testify, the appellate court will not reverse the cause, unless it affirmatively appears, from the record of such examination, that the court below erred.

2. Section 8, article 11, chapter 66, Procedure Criminal, authorizes the court to receive the verdict of a jury upon the Sabbath day.

3. Where the trial court received the written verdict of a jury, and the same was thereafter read to them by the clerk, and the judge inquired of the jury if that was their verdict, and they answered in the affirmative, and afterwards the jury was polled by the judge, each juror answering that the verdict so read was his verdict, *held:* That the substantial requirements of § 12, art. 12, of the laws of Oklahoma were complied with.

*Error from Oklahoma County.*

The opinion states the material facts.

From a conviction at the February term, 1894, of the district court of Oklahoma county, the defendant, John Milligan, appeals.

*Amos Green, D. C. Lewis,* and *Charles R. Reddick,* for appellant.

*C. A. Galbraith, Attorney General, J. H. Woods, County Attorney,* and *J. M. Johnson,* for appellee.

The opinion of the court was delivered by

DALE, C. J.: This is an appeal from a judgment returned in the district court of Oklahoma county. At the February term, 1894, the defendant was convicted of the crime of murder, and was, by the judge of the lower court, in accordance with the verdict returned by the jury, sentenced to be hanged.

An appeal was taken from the judgment of the lower court and such judgment duly stayed pending

the affirmance or reversal of the judgment by this court.

The errors complained of are not specifically pointed out, but from a reading of the transcript and case made we find that the defendant below has fairly before us three propositions which we may consider:

1. Did the court below err in permitting the witness named Amelda Clark to testify on behalf of the territory?

2. Did the court err in receiving the verdict of the jury upon the Sabbath day?

3. It is alleged that the verdict of the jury was not recorded upon the minutes of the clerk and thereafter read to them before the jury was allowed to separate.

Upon the first proposition is appears that Amelda Clark was called as a witness for the prosecution; that counsel for defendant applied to the court for an examination of said witness touching her competency as a witness, which request was granted, and, after sending the jury out, the witness was questioned by the court and counsel as to her age, knowledge of the facts and the nature and obligations of an oath administered to her.

It is insisted that such examination did not justify the court in permitting the witness to testify before the jury. The questions propounded to the witness, as well as the answers thereto, and the testimony she was permitted to give to the jury, appear in the record.

A perusal of the record shows the witness to have been of ordinary intelligence upon most of the subjects about which she was interrogated. She was unable to give her age, and we will assume that she was under the age of ten years.

The second subdivision of § 4213, of the statutes of Oklahoma, which section provides what persons shall

be incompetent to testify upon the trial of a cause, reads as follows:

"Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

Upon the objection of counsel for the defendant to receiving the testimony of the witness, the court examined the child with a view to determine whether or not she had an understanding touching the facts about which she was called to testify, or whether the impressions she had received were just, and also to determine her ability to relate the facts truly. Our statute leaves the question of determining the competency of such witness wholly in the discretion of the trial judge. He has the witness before him and is better able to judge of the intelligence of a witness than can the appellate court in reading the answers of the witness to the questions as they appear in the record. Before an appellate court should reverse the lower court, it must clearly appear from the record that the judge, in admitting the testimony of the witness, did not act within the discretion granted by the statute. The record fails to show such a condition in this case. On the contrary, an analysis of the questions and answers of the witness, both upon the examination touching her competency and her testimony as given before the jury, indicates that the witness should have been permitted to testify.

The second objection raised is easily disposed of under our statute. Seccion 8, articie 11, chapter 68, Procedure Criminal, of the statutes of Oklahoma, is as follows:

"While the jury is absent the court may adjourn from time to time as to other business, but it is, nevertheless, deemed open for every purpose connected with the cause submitted to them, until a ver-

dict is rendered or the jury discharged.    A final ad-
journment of the court discharges the jury."

In the case under consideration it appears that the
verdict was received by the judge on Sabbath morn-
ing.    The section of the law above quoted keeps the
court continuously in session until the jury have re-
turned their verdict or shall have been discharged, or
until the final adjournment of the term.    If the court
is by law in session. it follows that the court can per-
form the acts for which it is in session.    It is kept
open to receive the verdict of the jury, and under the
statute quoted, for the purpose of receiving the ver-
dict of the jury, it is as much in session on the Sabbath
as it can be on any other day of the week.

The third question raised relates to the manner of
receiving, recording and announcing the verdict.    It
appears that, when the jury returned their verdict
into court, the same was in writing, signed by the
foreman, and was by the court handed to the clerk,
who read the verdict to the jury, and that the court
thereupon asked the jury if that was their verdict;
that the foreman answered in the affirmative; the
court then, on his own motion, polled the jury, asking
each member of such jury whether or not the verdict,
as read by the clerk, was his verdict, and that each
juror answered affirmatively, after which the jury was
discharged.

Appellant contends that under §12, article 12, gen-
eral section 5254, laws of Oklahoma, the verdict was
improperly received and that no judgment against the
defendant was legally had upon such verdict.    The
section referred to reads as follows:

"When the verdict is given, and is such as the court
may receive, the clerk must immediately record it in
full upon the minutes, and must read it to the jury
and inquire of them whether it is their verdict. If any
juror disagree the fact must be entered upon the min-

utes and the jury again sent out; but if no disagreement is expressed the verdict is complete and the jury must be discharged from the case."

This section of our statute may be said to be declarative of the common law rule for receiving verdicts in criminal prosecutions, and the reason for such rule is apparent. Under the common law, the jury, through their foreman, would orally announce their verdict. The clerk would at once record the same, after which the clerk would, in open court, before the jury were discharged, read the verdict as he had recorded the same, and the judge would then inquire of the jury if the verdict so read was their verdict. If the jury answered in the affirmative, they were discharged. If any member of the jury expressed himself dissatisfied, the jury were sent out for further deliberation. This mode of practice was followed because the verdict delivered orally might not be recorded as intended by the body delivering the same; and after the jury were once discharged, they could not again be convened to further consideration of their verdict. And it was to prevent mistakes that the rule was adopted, which required the clerk to immediately make a record of the oral verdict and read his recorded verdict to the jury, so that all questions as to the character of the verdict might be forever put at rest before the jury separated and while they still had the matter under control.

Our statute makes no specific provision as to whether the verdict in a criminal case shall be delivered orally or in writing. In the case under consideration, the verdict was reduced to writing and signed by the foreman, and so returned in open court, and by the clerk at once read to the jury, and, in the absence of proof, we are bound to find that the same was duly filed as part of the records of the case. But it is agreed that the verdict was not recorded before

it was by the clerk read to the jury and the jury discharged, and it is contended that the section of the law last quoted is mandatory. The reason for the common law rule has ceased to exist. Under the manner of receiving the verdict in this case the same certainty was had as to the character of the verdict returned as was had in receiving verdicts under the common law rule. In this case the jury had reduced their verdict to writing and by their foreman signed the same, and no mistake could occur as to their intention. It was as accurately determined, perhaps more so, than it would have been if the clerk had taken the same, transcribed it upon the minutes of his proceedings, and read the same to the jury. So, in effect, and for the purpose of protecting the substantial rights of the defendant, it will be seen that when the clerk read the verdict of the jury from the instrument returned as their verdict, he read the recorded verdict of the jury, and whether he transcribed it upon his minutes before or after he read it to the jury is immaterial, as the substantial act of recording the verdict was performed by the jury when they returned the written verdict duly signed by their foreman.

And this brings us to the proposition as to whether or not this tribunal will reverse the trial court for an error which is wholly immaterial in so far as it affects the substantial rights of the appellant. General section 5330 of our statute, relating to appeals, reads as follows:

"On appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

This section must be given proper effect in considering this matter. In so far as the statute invoked by appellant is concerned, it may be stated that the substantial requirements thereof have been complied

with, and that the trial court gave to the defendant below every right intended to be guaranteed to him by the laws of our territory, and that if we shall observe the requirement of § 5330, *supra*, we must regard the objection as technical, and insufficient to reverse this case.

The judgment of the court below is affirmed, and the case remanded for further proceedings under the sentence.

Justice Scott, having tried the case below, not sitting; all the other Justices concurring.