Note.—See under (1) 28 Cyc. p. 212 (Anno) ; 19 R. C. L. p. 733. (2) 28 Cyc. p. 1708.

---

## SCHAFF. Rec.. v. COYLE et al.

No. 15514—Opinion Filed Jan. 27, 1925.

Rehearing Denied Sept. 21, 1926.

(Syllabus.)

**1. Appeal and Error—Pleading—Discretion of Court—Motion to Make More Definite and Certain.**

A motion to make more definite and certain is addressed largely to the discretion of the court; and its ruling thereon will not be reversed, except for the abuse of such discretion that results prejudicially to the complaining party. And where the facts sought by such motion are within the knowledge and possession of the movant, it is not error to overrule the same.

**2. Railroads—Origin of Fire—Circumstantial Evidence.**

The fact that a fire which destroyed property originated from the sparks of a passing locomotive may be shown by circumstantial evidence.

**3. Evidence — Circumstantial Evidence — Weight and Sufficiency.**

Circumstantial evidence in civil cases. in order to be sufficient to sustain a verdict need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury.

**4. Railroads—Origin of Fires—Evidence of Fires Set by Other Locomotives.**

In an action against the receiver of a railroad company to recover damages on account of fire caused by sparks from one of its locomotives, evidence of the setting of other fires by other locomotives is competent where it is made to appear that they were practically identical in construction to the locomotive supposed to have set the fire.

**5. Same.**

In an action against the receiver of a railroad company for setting fire from sparks from passing locomotives, where it appears that two engines, with cars, passed the point of the fire, at about the same time. and going in opposite directions, and both working steam and throwing cinders, and it is not alleged in the petition nor proven which one of the engines did set the fire, such facts do not constitute an identification of the particular engine that set the fire, and evidence of previous fires. set by other engines of the defendant, at other and different times, not too remote in point of time, is admissible, as tending to prove that sparks or cinders emitted from the defendant's engines on the particular occasion could and probably did carry to and ignite cotton on the compress platform and as tending to prove a possibility and consequently probability that the fire in question originated from sparks or cinders emitted from passing locomotives of the defendant.

**6. Same—Sufficiency of Evidence.**

A compress situated about 218 feet from the track and filled with baled cotton was destroyed by fire, which caught on the south side of the platform near the tracks of the defendant. The compress was open on the sides. Two engines operated by the defendant passed the compress going in opposite directions, and both working steam and throwing cinders. The wind was blowing from the direction to carry the cinders and sparks from the engines toward the compress. No other cause for the fire was suggested by the evidence of the plaintiff than that it was set by one of these engines. Sparks from similar engines running on the same track set fire to cotton on the compress platform on previous occasions. Held, it was not error under these facts to overrule a demurrer to the evidence, and it was not error to overrule a motion for new trial based on the ground that the evidence was not sufficient to sustain a judgment against the defendant.

**7. Same—Liability for Damages—Validity of Statute.**

Section 3851, Comp. Stat. 1921. providing: "Any' railroad company operating any line in this state shall be liable for all damages sustained by fire originating from operating its road" is valid and constitutional, and imposes upon railroad companies and receivers of railroad companies. liability for all damages sustained by fire originating from the operation of the road, whether the same be due to negligence or not.

**8. Evidence—Photographs—Discretion of Court—Limited Purpose.**

The admission of photographs in evidence is a matter addressed to the sound discretion of the trial court, and it is not error to receive in evidence a photograph for a limited purpose where the court instructs the jury that they shall consider it for the limited purpose only.

**9. Depositions — Admissibility — Witness Within Jurisdiction of Court.**

The deposition of a witness cannot be used as evidence in the trial of a cause. where it appears that the witness is within' the jurisdiction of the court, except where such witness is disabled or sick or unable to attend court, or where the parties agree to the use thereof.

**10. Appeal and Error—Discretion of Trial Court—Children as Witnesses.**

Under section 589. Comp. Stat. 1921, the competency or incompetency of a child under ten years of age to testify is a question addressed to the sound discretion of the trial court. and unless it clearly appears that there has been an abuse of that discretion, the ruling thereon will not be disturbed.

**11. Witnesses—Incompetency—Decision After Partial Testimony.**

Where a witness has testified in part and has been by the trial court declared incompetent to testify, and the trial court has advised the jury to disregard such testimony, it is not error for the court to refuse to permit the witness to be further examined or cross-examined.

**12. Evidence—Res Gestae—Statements Responsive to Accusing Question.**

Statements of the witness. Shelby Bouknight, a boy six years old, made several minutes after the fire started and after the boy had gone several hundred feet to the east edge of the compress platform, and after he had been removed therefrom and taken some 50 yards from said platform, which were made in response to the inquiry. "What did you set that cotton afire for?" are not admissible in evidence as part of the res gestae, the same not being induced by the happening of the fire and the sur-

rounding circumstances, but by reason of said accusing question.

**13. Principal and Agent—Proof of Agency—Declarations and Acts of Alleged Agent.**

Agency, cannot be proved against another by evidence of the declarations of an agent, and where one purports to act as agent for another. that fact of itself is not sufficient evidence upon which to submit the question of agency to the jury.

**14. Evidence—Admissions by Conduct—Efforts of Defendant's Agent to Obtain False Testimony.**

In an action of this kind, it is proper for the plaintiff to establish that the duly authorized agent of the defendant had been guilty of misconduct in attempting to establish false and perjured testimony, as an admission by the defendant that it had a weak defense.

**15. Evidence—Hearsay—Action for Damages from Fire—Confession of Arson by Third Party.**

Evidence of persons that a negro boy had made statements that he set the fire in question is mere hearsay and is not admissible.

**16. Evidence — Misconduct of Defendant's Agent in Effort to Secure False Testimony—Excuse for Effort.**

Where the plaintiff has introduced evidence tending to establish that a duly authorized agent of the defendant had been guilty of misconduct in attempting to establish false and perjured testimony by a certain witness, evidence of statements and declarations of said witness in harmony with said alleged false testimony would not be admissible. for the purpose of showing good faith of defendant's agent unless it be first established that said agent knew that said statements had been made, and had reasonable grounds to believe the same to be true. and that relying thereon, he did the acts complained of.

**17. Trial—Instruction — Limiting Purpose of Evidence.**

Where evidence is admitted as relevant to a particular issue, the court. upon proper request, should limit such evidence, by proper instructions, to the particular issue upon which it is competent.

**18. Appeal and Error—Erroneous Instruction—Necessity for Injury.**

Before the court will reverse a case because of the giving or the refusal to give instructions, it must clearly appear that the instructions complained of have caused a miscarriage of justice.

**19. Railroads—Damage from Fires—Proximate Cause—Instructions Approved.**

Instructions in the instant case examined,

and held, to fairly state the law applicable to the case.

**20. Trial—Argument—Evidence Supporting.**

A judgment will not be reversed because of remarks made by counsel in the closing argument, where such remarks were mere conclusions drawn from the circumstances surrounding the case, and from testimony admitted without objection.

**21. Insurance — Action Against Third Party for Wrongful Destruction of Property—Rights of Insurers After Paying Policies—Parties Plaintiff.**

Where insurance companies pay to the assured a loss occasioned by the wrong of a third party, the assured may maintain an action in his own name, or he may maintain an action jointly with any or all of the assurers paying the loss, and as trustee for the use and benefit of such companies, against the wrongdoer, and recover the full amount of the loss.

**22. Appeal and Error—Harmless Error.**

It is only where the errors complained of have resulted in a miscarriage of justice, or constitute a substantial violation of some constitutional or statutory right, that this court will reverse a cause, because of the admission or rejection of evidence, the giving or refusing of instructions, or alleged errors in matters of pleading or procedure.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Ed. J. Coyle and Great American Insurance Company, and Ed J. Coyle, as trustee, against Charles E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company. From a judgment for plaintiffs, the defendant appeals. Affirmed.

M. D. Green. H. L. Smith, and Spence, Haven, Smithdeal & Spence, for plaintiffs in error.

Rittenhouse & Rittenhouse, P. T. McVey, and G. L. Grant, for defendant in error.

MASON, J. This action was commenced in the district court of Pontotoc county, Okla., by the defendants in error, as plaintiffs, against the plaintiff in error, as defendant, to recover damages occasioned by the destruction of the compress of the Interstate Compress Company, at Oklahoma City, by fire, on March 29, 1921, at which time the plaintiff, Ed J. Coyle, had stored therein 243 bales of cotton, which was also destroyed. The plaintiff alleges that the fire was set by a locomotive engine operated by the defendant on the tracks of the Missouri, Kansas & Texas Railway, south of said compress.

A trial was had to a jury, which resulted in a verdict for the plaintiffs, on which judgment was rendered, and from which the defendant has appealed. The parties will hereafter be referred to as they appeared in the trial court.

For reversal, it is first insisted that the trial court erred in overruling defendant's motion to require the plaintiffs to make their petition more definite and certain. Motions to make more definite and certain are addressed to the sound discretion of the trial court, and where, as in this case, the information sought to be obtained thereby is within the knowledge of the defendant, and can be obtained from records, train sheets, switch lists, reports, and other documentary evidence, kept by the defendant, showing the movement of its various trains and engines, this court cannot say that the trial court abused its discretion in overruling such action. City of Lawton v. Hills, 53 Okla. 243, 153 Pac. 297; Ft. Smith & Western Ry. Co. v. Ketis, 23 Okla. 696, 110 Pac. 661; Landon v. Morehead, 34 Okla. 701, 126 Pac. 1027; City of Chickasha v. Looney, 36 Okla. 155, 128 Pac. 136; Frey v. Failes, 37 Okla. 297, 132 Pac. 342.

Counsel for defendant next insist that the court erred in overruling the demurrer to the evidence, and contend that the court erred in admitting, over their objection, evidence that other engines of the defendant operated on the same tracks at the same place had on previous occasions emitted sparks and cinders and set fire to cotton on the platform of the compress in question; it being contended that without such evidence, the evidence offered by the plaintiffs was insufficient to entitle the plaintiffs to have their case submitted to the jury.

The evidence on behalf of the plaintiffs discloses that the compress in question was located north of the main line of defendant's road, and east of Phillips street in Oklahoma City. The exact distance of the compress from the main line was not shown by the plaintiffs, but the defendant produced evidence to show the distance to be between 178 and 218 feet. There was a long string of box cars on the loading track just south of the compress. The compress was covered with a metal roof, and open on the sides and filled with bailed cotton on the day of the fire. There was a high wind blowing from the south which carried the cinders from the defendant's engines in the direction of the compress. The evening passenger train of the defendant was coming into the city, just prior to the fire, and stopped at the Rock Island crossing east of the compress, and at about the same time a switch engine,

with a string of box cars, which was coming from the west, came to a stop south of the compress, then worked steam and pulled into a side track. The passenger train came slowly down to this switch waiting for the switch engine and cars to clear the main line, after which it worked steam and pulled on into the depot. At the time both engines passed the compress they were working steam and emitting sparks and cinders. The fire at the compress was discovered four or five minutes after the passenger train had passed.

The evidence also discloses that the main line of the defendant's road south of the compress was practically level. It also discloses that the engines operated by the defendant were all of the same general construction. There was no allegation in the petition that any particular engine set the fire.

The evidence complained of was to the effect that in February, 1921, and again in the early part of March, 1921, fires were set at the compress by cinders emitted from a switch engine of defendant while switching on the tracks south of the compress, and that after the fire in February, Mr. Laughlin, superintendent at the compress, notified the railroad officials of said fire and that their engines were emitting sparks.

The evidence also discloses that at the time of the fire no employes were on the south side of the compress, although some employes were on the north side, and others, and a small boy, named Shelby Bouknight, were in the engine room. It also appears that the fire started on the south side of the compress about 350 feet south of the office. There is no direct evidence that sparks or cinders from either of the engines caused the fire, but it is contended that this is established by reason of certain circumstances.

The question then arises as to whether or not such facts may be established by circumstantial evidence. The court in the case of Midland Valley Ry. Co. v. Taylor, 85 Okla. 95, 204 Pac. 1102, states the rule as follows:

"The fact that a fire which destroyed property originated from the sparks of a passing locomotive may be shown by circumstantial evidence."

The following cases are to the same effect: St. Louis & S. F. Ry. Co. v. Shannon, 25 Okla. 754, 108 Pac. 401; Wichita Falls & N. W. Ry. Co. v. Arnold, 56 Okla. 352, 156 Pac. 296; Missouri, K. & T. Ry. Co. v. Simerly, 72 Okla. 251, 180 Pac. 551; Kansas City Southern Ry. Co. v. Jones, 90 Okla. 231, 216 Pac. 909.

It is contended by the defendant, however, that while circumstantial evidence is proper, yet an inference cannot be founded upon a presumption. Citing Midland Valley Ry. Co. v. Rupe, 87 Okla. 286, 210 Pac. 1038; St. Louis & S. F. Ry. Co. v. Mobley, 70 Okla. 297, 174 Pac. 510, and other cases. These cases, we think, can easily be distinguished from the case at bar, as the facts in those cases fail to disclose many essential circumstances necessary to support the conclusion that the fire originated from sparks emitted from a passing engine.

This court in the case of M., K. & T. Ry. Co. v. Simerly, supra, held as follows:

"Circumstantial evidence in a civil case. in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury."

This court, in the case of Midland Valley Ry. Co. v. Taylor, supra, in dealing with the admissibility of evidence of previous fires, said:

"Where there is no proof of what particular engine set the fire, and the circumstantial evidence is sufficient to justify the inference that some engine on the road did set the fire, then it may be proper to show that the engines on the road at that particular place often emitted sparks, and that some or many of the engines did so at other and different times."

The same rule is announced in Kansas City So. Ry. Co. v. Jones, supra; Missouri Pacific Ry. Co. v. Lamb. 99 Okla. 132, 226 Pac. 91.

This court in the case of St. Louis & S. F. Ry. Co. v. Shannon, supra, says:

'In an action against a railroad company to recover damages on account of fire caused by sparks from one of its locomotives, evidence of the setting of other fires by other locomotives is competent where it is made to appear that they were practically identical in construction to the one supposed to have set the fire."

In the body of the opinion the court, in discussing the exception to the general rule where the engine that set the fire is not identified, uses the following language:

"* * * We will say that it would seem that the weight of authority is to the effect that, where the engine which is alleged to have set out the fire is identified, then evidence of other fires by other engines and at other times is inadmissible. This states the general rule on the proposition, yet there are exceptions to it within which in our judgment the facts disclosed by the record cause this case to fall, and which relieve us of

passing on it. The rule fixed by the exceptions seems to be that, where the defense relied upon by the company is that the point at which the fire is set is beyond the limit locomotives of the company throw cinders or fire, or where it is established that the engines of the company are all practically identical in their construction and operation, then it is permissible, independent of the identification of the engine which it is asserted actually set the fire, to show that other fires, not too remote in point of time, have been set by other engines of the company."

The evidence in the instant case is to the effect that the engines of the defendant were all of the same general construction, including the front end appliances, and that the operation of the engines on the several occasions was similar. This is sufficient, we think, to bring the case within the second exception as set forth in the Shannon Case, supra. In addition to this, it is contended by the plaintiffs that the defendant claimed at the trial that defendant's engines could not throw sparks and ignite cotton on the compress platforms because of the distance from the tracks to the compress, and that therefore this case also falls within the first exception of the Shannon Case. While this is not clearly disclosed by the record, it does appear that the defendant offered evidence of its civil engineers to the effect that the compress was some 218 feet distant from the main line tracks, which taken in connection with the statements made by counsel for defendant in their brief on this point leads us to conclude that the issue was made at the trial, as well as in this court, and that, therefore, this case comes within the first exception to the general rule.

It further appears that two engines, with cars, passed the compress over the main line at about the same time, going in opposite directions, and both working steam and throwing cinders. It is not alleged, nor was it proven, which one of these engines set the fire in question. Under these facts, the particular engine that set the fire is not identified, and evidence of previous fires, set by other engines of the defendant, at other and different times, was admissible. Director General of Railroads v. Johnson (Del.) 114 Atl. 759; Missouri, K. & T. Ry. Co. of Texas v. Dawson Bros. (Tex. Civ. App.) 109 S. W. 1110; Alabama & V. Ry. Co. v. Aetna Ins. Co. (Miss.) 35 South. 304; Libbey v. Maine Cent. Ry. Co. (Me.) 100 Atl. 1025; Northern Pac. Ry. Co. v. Mentzer, 214 Fed. 10; Fodey v. Northern Pac. Ry. Co. (Idaho) 123 Pac. 835; Tuttle v. Missouri Pac. Ry. Co. (Kan.) 119 Pac. 370; Philadelphia & R. Ry. Co. v. Green & Flynn (Del.) 119 Atl.

840; Smith v. Central Vermont Ry Co. (Vt.) 67 Atl. 535; Knickerbocker Ice Co. v. Pennsylvania Ry. Co. (Pa.) 97 Atl. 1051.

We, therefore, hold that evidence of previous fires set by other engines of the defendant, at other and different times, not too remote in point of time, at or near the place where the fire in question occurred, was admissible as tending to prove that sparks and cinders emitted from the defendant's engines on this particular occasion could and probably did carry from such engines to and ignite cotton on the compress platform, and also as tending to prove a possibility and a consequent probability that the fire in question did in fact originate from sparks or cinders emitted from passing engines of the defendant.

From a careful examination of the evidence offered by the plaintiffs, we are of the opinion that a prima facie case was established, entitling plaintiffs to recover, and that the court did not err in overruling the defendant's demurrer to the evidence.

Counsel for the defendant further insist that section 3851, Comp. Stat. 1921, which provides:

"* * * Any railroad company operating any line in this state shall be liable for all damages sustained by fire originating from operating its road"

—does not apply to a receiver acting under orders of a court, and inasmuch as the defendant was appointed receiver of the properties of the Missouri, Kansas & Texas Railway Company by the federal court, that said section of the statutes has no application, and that, therefore, the burden was on the plaintiffs to show negligence of the defendant in setting said fire, if in fact it did set the fire. We cannot agree with such contention. Section 3851, Comp. Stat. 1921, supra, has been held valid and constitutional by this court. Choctaw, Oklahoma & Gulf R. R. Co. v. Alexander, 7 Okla. 591, 54 Pac. 421, and 7 Okla. 597, 52 Pac. 944; Midland Valley Ry. Co. v. Lynn, 38 Okla. 695, 135 Pac. 370.

The Judicial Code of the United States (Act of Cong. of March 3, 1911, 36 Stat. at L. 1087) sec. 65, is as follows:

"Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. * * *"

Section 66 of the Judicial Code provides that suits may be instituted against receivers without the previous leave of the court in which such receiver or manager was appointed, and also provides the method of service.

It is unnecessary to review the great number of authorities cited by counsel for plaintiffs and defendant on this subject, as the weight of authority upholds the liability of receivers as set forth in sections 65 and 66 of the Judicial Code of the United States. In the case of Eddy v. Lafayette, 163 U. S. 456, 41 L. Ed. 225, which was an action similar to the case at bar, the United States Supreme Court said:

"The trial court and also the Circuit Court of Appeals were of the opinion that the third section of the Judiciary Act of March 3, 1887, c. 373, sec. 2, 24 Stat. 552, 554, authorizing suits to be brought against receivers of railroads without special leave of the court by which they were appointed, was intended to place receivers upon the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad and as respects the mode of service. We concur in that view. * * *"

The Supreme Court of Massachusetts, in a well-considered opinion, Sullivan v. Hustis, 130 N. E. 247, said:

"The words of the pertinent sections of the Judicial Code require the receiver of a railroad corporation to conduct its business and operate its system of transportation in conformity to valid state laws upon the same footing, with like responsibility and subject to the same liability to respond to suits which would rest upon the owner if in possession and operating." See, also, McNulta v. Lochridge, 141 U. S. 327, 35 L. Ed. 796.

We therefore hold that where a receiver, appointed by the federal court, takes possession of the properties of a railroad company, and operates the same, he is subject to all the valid laws of the state, and as respects his liability for damages, he stands in the place of the corporation, and is liable under section 3851. Comp. Stat. 1921, for all damages sustained by fire caused by the operation of the railroad properties, whether or not such fire is due to negligence.

Counsel for defendant next complain of the admission in evidence of a certain photograph of the railway tracks south of the compress, because it contained two men and some box cars. The photograph is not incorporated in the record, but from the record as made it appears that this photograph was offered for the limited purpose of showing the location and conditions of the tracks south of the compress, and that it was admitted for that purpose only. The admission of photographs in evidence is a matter within the discretion of the trial court, and when duly verified, they are admissible in evidence as aids to the jury in arriving at an understanding of the evidence, or of the situation or condition or location of objects or premises, material and relevant to the issue. St. Louis & S. F. Ry. Co. v. Dale, 36 Okla. 114, 128 Pac. 137; Colonial Refining Co. v. Lathrop, 64 Okla. 47. 166 Pac. 747. From an examination of the record in this case, it cannot be said that the trial court abused its discretion.

The defendant contended at the trial that the fire which destroyed the compress and the cotton stored therein was set on fire by a negro boy named Haywood Rector. This boy's depositions were taken in Los Angeles, Cal., but were not used at the trial, it appearing that the boy was present at the trial. Neither was he used as a witness by either side. Other witnesses, however, were used by the defendant in an endeavor to establish this fact. The evidence on this point was conflicting, and as the jury found in favor of the plaintiffs, this court is bound by such finding.

As to the movement of the engines and trains immediately before the fire, defendant's witnesses, in a measure, corroborated the testimony offered by the plaintiffs, and the defendant established the exact time that elapsed after the passenger train passed the compress until the fire whistle sounded, which was six minutes.

The plaintiffs offered evidence in rebuttal to show that H. B. Kerr, special representative of the defendant, had been guilty of improper conduct in procuring evidence to establish the defense that this negro boy, set the compress on fire. H. B. Kerr took the witness stand for the purpose of showing that he acted in good faith in procuring evidence to establish this defense. Charges and counter charges have been made, both in the oral argument and in the briefs of both parties, and each has gone entirely outside the record in this case and has drawn conclusions not warranted by the record. The question of the good or bad faith of H. B. Kerr in procuring testimony for the defendant was submitted to the jury, and they found against him, and from a review of the entire record we are satisfied that the jury was justified in so finding.

Counsel for defendant next insist that the court erred in refusing to admit the depositions and testimony of the witness Shelby

Bouknight, a boy six years of age at the time of the fire, and erred in refusing to permit this witness to answer questions asked by counsel for defendant regarding his previous testimony and erred in ruling that the boy was an incompetent witness.

This witness had testified by depositions several months before the trial, and these depositions were offered by the defendant. Objections were made by plaintiffs and sustained by the court on the ground that the witness himself was present. This action of the trial court was proper, as depositions of a witness cannot be used in the trial of a cause where the witness is within the jurisdiction of the court. except where such witness is disabled or sick and unable to attend court, or where the parties agree to the use thereof. Section 612, Comp. Stat. 1921; Fullenwider v. Ewing, 30 Kan. 15.

The boy was then called to the witness stand, and was examined by counsel for the defendant and by the court touching his qualifications and upon the issues in the case. It appears that the boy gave testimony adverse to the defendant and contradictory to the statements contained in his depositions. The trial court after hearing the witness testify, from which testimony it appears that the witness was incapable of receiving just impressions of the facts respecting the fire. and circumstances thereof, and of relating them truly, held that the witness was not competent to testify, and instructed the jury not to consider anything the boy had said. The trial court saw the witness, observed his demeanor, and therefore was in a better position to pass upon his competency than this court.

Section 589, Comp. Stat. 1921. provides:

'The following persons shall be incompetent to testify: * * *

"Second, children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

Under this statute. the competency or incompetency of a child under ten years of age to testify is a question addressed to the sound discretion of the trial court, and unless it clearly appears that there has been an abuse of that discretion. the ruling thereon will not be disturbed. Milligan v. Territory of Oklahoma, 2 Okla. 164, 37 Pac. 1059; Walker v. State, 12 Okla. Cr. 179. 153 Pac. 209; Darneal v. State. 14 Okla. Cr. 540. 174 Pac. 290. From an examination of the record, we cannot say that the trial court abused its discretion.

The witness being incompetent to testify,

it was not error for the court to refuse to permit counsel for the defendant to cross-examine the boy by reading questions asked in the depositions and asking him if he did not answer as set forth therein. He being incompetent to testify, he could not be cross-examined by either party. Counsel for defendant, however, rely upon the rule announced by this court in Bucher v. Showalter. 44 Okla. 690, 145 Pac. 1143, wherein it is held:

"When a party, relying upon a prior statement of the witness that he will testify to certain facts favorable to the party calling him places a witness on the stand, and the witness testifies unfavorably and different to what he has led the party calling him to believe his testimony would be, the party calling him has the right to show that the witness made a different statement before he was placed on the stand, which induced the party to call him."

This general rule is supported by many decisions from this and other states, but this rule could not apply to the instant case, inasmuch as it is obvious that it applies only in cases where the witness is competent to testify and where the party calling him has been deceived by statements made by the witness just prior to the trial. It also appears from the record that the defendant had taken the depositions of the boy's stepfather a few weeks before the trial, wherein counsel for defendant were advised that the boy had "fessed up" and had said that he did not see a negro boy set the compress on fire. as stated in the boy's deposition taken by the defendant. Under these conditions, we are unable to see why counsel for defendant should expect favorable testimony from this witness. Neither can we see wherein counsel for defendant would be surprised. misled. or deceived by such testimony even though it had not been stricken from consideration of the jury by the trial court.

Counsel for defendant also complain of the action of the court in excluding the testimony of the witness Will Dunn relative to certain statements made by Shelby Bouknight to the witness. The testimony is set out in the record and is as follows:

"I says to him: 'What did you set that cotton afire for, that cotton afire?' He said: 'I didn't set it afire.' I said: 'Who set it afire?' He said: 'That other boy. I told him not to strike that match and set it afire, they would put him in jail.' I says: 'Where is the boy?' He said: 'He went up town with a man.'"

It appears that the witness Dunn was walking on the Rock Island tracks and that his attention was drawn to the fire by the

fire whistle, and that the fire had spread considerably over the compress at that time. The record discloses that this boy had been in the engine room of the compress some 15 minutes before he left and ran to the edge of the platform, where he was seen by the witness, and that this statement or conversation was not alleged to have been made until after the boy had been taken off the platform and taken some 50 yards from the east end of the compress, and some 200 yards from the point where the fire started. It also appears that the answers of the boy were procured by reason of accusing questions. Under these conditions, the defendant insists that the trial court erred in excluding this testimony, contending that these alleged statements constitute a part of the res gestae and were therefore admissible. With this contention, we cannot agree. This court in the case of Coalgate Co. v. Hurst, 25 Okla. 588, at p. 598, 107 Pac. 657, at p. 660, says:

"The defendant (plaintiff in error) offered to prove by one of its employes that within 20 or 30 minutes after the accident in a conversation with Jenkins near the entrance of the mine whilst he was then in a semiconscious, or what was termed by the witness as a flighty or groggy condition, that he said: 'I asked Jenkins where his buddy was,' and he stated, 'He is on ahead, dead, all right. My lower limbs are paralyzed. I told him not to fire the shot, but he said he would go ahead and fire it anyhow.' Was it a part of the res gestae? If so, it should have been admitted. Otherwise, not. Was the alleged statement spontaneous and so connected with the main fact under consideration as to illustrate its character, or to form in conjunction with it one continuous transaction? Jenkins was a servant of the master and may have fired this shot that caused the accident and when confronted with his coemploye, with the inquiry as to where his 'buddy' was, being apprehensive as to the consequence of his act, he may have sought to escape such responsibility by placing it upon his coemploye."

In the case of City of Wynnewood v. Cox, 31 Okla. 563, at p. 567, 122 Pac. 528, at p. 533, Ann. Cas. 1913E, 349, following the case of Coalgate Company v. Hurst, supra, the following language is used:

"'Res gestae,' as said by Mr. Wharton, in his work on Criminal Evidence (section 262) 'are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that speaks.'"

In the case of Missouri, O. & G. Ry. Co.

v. Adams, 52 Okla. 557, 153 Pac. 200, it is said:

"In an action for damages arising from a collision between a railway locomotive and a wagon, in which the occupants of the wagon were injured, a statement by the engineer of the train, in response to a question by the conductor, made after the accident had occurred and the train had stopped and the engineer and conductor had alighted therefrom, held not admissible as a part of the res gestae."

In the body of the opinion, at p. 562, the court says:

"In the opinions of courts of last resort are to be found innumerable decisions upon what is or is not admissible in evidence as a part of the res gestae. The result is that the admissibility of such evidence in every case must depend upon the circumstances of the particular case. But the rule is universal that, to be admissible as part of the res gestae, the statement must be substantially contemporaneous with the transaction, made on the spur of the moment, and induced by the happening of the events concerning which the statement is made, and not a narrative or statement of what has occurred. Smith v. C., R. I. & P. Ry. Co., 42 Okla. 577, at p. 580, 142 Pac. 398; Louisville & N. R. R. Co. v. Webb, 99 Ky. 332, 35 S. W. 1117; Durkee v. Central Pac. R. R. Co. (Cal.) 9 Pac. 99; Fredenthal v. Brown, 52 Or. 33, 95 Pac. 1114."

The case of Prickett v. Sulzberger & Sons Co., 57 Okla. 567, at p. 578, 157 Pac. 356, quotes from McKelvey on Evidence, as follows:

"The ground of reliability upon which such unknown declarations are received is as spontaneity. They are the ex-tempore utterances of the mind under circumstances and at times when there has been no sufficient opportunity to plan false or misleading statements; they exhibit the mind's impression of immediate events, and are not narrative of past happenings; they are uttered while the mind is under the influence of the activity of the surroundings."

To the same effect is the case of Chicago, R. I. & P. Ry. Co. v. Foltz, 54 Okla. 556, 154 Pac. 519. In the case of Chicago West Div. R. Co. v. Becker (Ill.) 21 N. E. 523, it was held that where a party was injured by a street car and had arisen and walked 40 feet to the sidewalk, that his answers to questions were not admissible as a part of the res gestae.

In Greener v. General Electric Co. (N. Y.) 102 N. E. 527, the statements of the deceased in response to inquiries made after falling from a ladder were not admissible as a part of the res gestae. In Guild v. Pringle, 130 Fed. 419, it was held that statements by a

man who had fallen into an excavation for a sewer, made ten minutes after the fall, during a conversation with a person above, and in answer to direct questions, were inadmissible as res gestae. In Lahey v. William Ottman & Co., 25 N. Y. Supp. 897, it was held that statements made at a drug store by the person injured; one or two blocks from the scene of the accident and in reply to questions by a policeman, were not part of the res gestae. In McBride v. Georgia Ry. & Electric Co. (Ga.) 54 S. E. 674, it was held that where a young lady was injured in alighting from a street car, and had afterwards walked into the station, and from there to her home some 200 or 300 yards distant and there made replies to questions asked her relative to the accident, that the same constituted no part of the res gestae. In Ft. Smith Oil Co. v. Slover (Ark.) 24 S. W. 106, it was held that statements made half an hour after the accident in answer to questions by the wife of deceased were no part of the res gestae.

In Huntley v. State (Fla.) 75 South. 611, the court said:

"It is true that the evidence of the child's mother detailing assertions claimed to have been made to her by the child alleged to have been assaulted was not objected to by the defendant's counsel, but with a child of only 3 years of age it was patently erroneous to permit its observations and utterances, especially in a case of this kind, to be detailed in evidence by its mother, and that, too, when made by the child, not spontaneously by way of complaint, but in response to a scolding interrogation by the mother. We have no hesitancy in saying that this testimony was wholly inadmissible for any purpose whatever. Adams v. State, 34 Fla. 185, 15 South. 905."

Under the rule announced in the foregoing cases, the evidence offered by the defendant as to statements made by Shelby Bouknight, after he had been helped from the compress platform and removed to the place where the witness Dunn was, in response to accusing questions asked by Dunn, constituted no part of the res gestae, and was properly excluded by the court.

The admission in evidence of statements as a part of the res gestae rests largely within the sound discretion of the trial court, under the facts and circumstances of the particular case. Missouri, O. & G. Ry. Co. v. Adams, supra; St. Louis & S. F. Ry. Co. v. Fick 47 Okla. 530, 149 Pac. 1126.

For the same reasons the offered evidence of the witness Mrs. W. J. Flynn, as to statements made by Shelby Bouknight the day following the fire, constituted no part of the res gestae, but was mere hearsay and incompetent.

The next assignment of error is that:

"The court should have received and permitted to go to the jury the evidence of L. F. Sweeten showing efforts of an evidence-man, employed by plaintiff's attorneys, to suppress sworn testimony, and the circumstances under which the boy Shelby Bouknight was caused to retract part of his deposition."

This assignment is based upon the action of the trial court in excluding the deposition of L. F. Sweeten when offered in evidence. The record discloses that L. F. Sweeten was the stepfather of Shelby Bouknight and was at the court house with the boy during the trial and that the court and both parties had knowledge of such fact. Under these circumstances the deposition was not admissible. Section 612, Comp. Stat. 1921.

In addition to this, the record does not disclose that any evidence other than admissions of the alleged agent was offered by the defendant to prove the agency or authority of R. C. Robinson, the alleged evidence-man to represent the plaintiffs. The rule is well established in this state that declarations of an alleged agent are not competent to prove agency, and the fact that a party assumes to act as the agent of another does not carry with it any presumption that he is such agent. Before acts or declarations of an alleged agent are admissible against the supposed principal, the fact of agency and authority must first be established by competent evidence. Western National Life Ins. Co. v. Williamson-Halsell-Frazier Co., 37 Okla. 213, 131 Pac. 691; Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 Pac. 333; Ok'ahoma Automobile Co. v. Benner, 70 Okla. 261, 174 Pac. 567; Stapleton Motor Sales Co. et al. v. Coley, 107 Okla. 269, 232 Pac. 28.

Counsel for defendant next complain of the admission in evidence of the testimony of Bud Smith, uncle of the negro boy, Haywood Rector, as irrelevant to any issue in the case and for the reason that the defendant had not used the depositions of Haywood Rector, which Smith testified had been wrongfully procured by H. B. Kerr, the special representative of the defendant.

The record discloses that before the testimony of Smith was received the court required the plaintiffs to establish the fact that H. B. Kerr was the special representa-

tive of the defendant, with authority to interview witnesses, secure their statements and assist in the trial of causes, all of which was afterwards testified to by Mr. Kerr. while on the witness stand.

The witness, Bud Smith, was then permitted to testify as to his meeting with Kerr in Oklahoma City, and of the arrangements made for the trip to Arizona with Kerr to secure the statement from Haywood Rector to the effect that Rector had set the compress on fire. Smith testified that Kerr had promised him a farm if he would get the boy to so testify and make the affidavit, and that Kerr also promised to take care of the boy until after the case was tried.. Smith also testified that he told Kerr that "He (Rector) did not set it afire," and that Kerr replied. "That makes little difference to us, got to have someone to set it afire".

He also detailed what took place at Fort Huachuca, Ariz.,· and testified how Kerr wrote out the affidavit asking the questions and giving the answers himself, and how the boy had later signed the affidavit prepared by Kerr. That later Kerr and the witness went to California in search of Rector, but returned without Kerr finding him. We think this evidence tended strongly to establish the fact that the defendant through its representative was endeavoring to procure false and perjured testimony, and such evidence was relevant on the main issue as tending to show an admission by its conduct that it had a weak case and needed this kind of evidence to support it. Western National Life Insurance Co. v. Williamson-Halsell-Frazier Co. supra; Chicago City Railway Co. v. McMahon, 103 Ill. 485; Pennington v. Kansas City Rys. Co. (Mo.) 213 S. W. 137; Nowack v. Metropolitan Street Ry. Co.,·166 N. Y. 433, 54 L. R. A. 592, 82 Am. St. Rep. 691, 60 N. E. 32; Commonwealth v. Min Sing (Mass.) 88 N. E. 819; Boyle v. Columbia Fireproofing Co. (Mass.) 64 N. E. 726.

The leading case on the subject is that of Nowack v. Metropolitan Street Railway Company. supra, where it is said:

"Evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor is competent as an admission of weakness in his case."

While the testimony of Haywood Rector was not used by the defendant, yet the defendant endeavored to establish the defense that the negro boy did set the compress on fire. and therefore the evidence, as well as the testimony of the witnesses, Roosevelt Flemming and Taft Flemming, Timothy Williams, James Phillips, Margaret Philips, and Estela Williams, was competent to show the conduct of the defendant and also to show that just prior to the fire Haywood Rector was with other children in the yard of Timothy Williams, and therefore did not set the fire as contended by the defendant. It also appears that the depositions of Haywood Rector were taken in California by the defendant and filed in the case but not used.

Counsel for defendant next insist that the testimony of J. K. Wright, H. T. Tumilty, and Tom Cavnar, officials of Oklahoma county; and the testimony of Joseph Shultz, J. B. Fox, and J. M. Bailey, officials of Los Angeles, Cal., to the effect that Haywood Rector had stated, at a time subsequent to the taking of his deposition in California, or while he was under arrest in Oklahoma City, that he had set the compress on fire, was admissible for two reasons: First. to offset the testimony of Flemming and Williams, witnesses as to where Rector was at the time the fire started; and second, to show the good faith of the defendant's investigator, Kerr.

Evidence of such alleged statements made by Rector would constitute mere hearsay, and therefore would not be admissible. In addition to this, the record discloses that Haywood Rector was present at the trial and could have been used as a witness by either party. Evidence of such statements would have been admissible as tending to show that Kerr was acting in good faith, if the statements had been made and Kerr had knowledge thereof prior to the time he talked with Rector and took his affidavit, but under the conditions in this case, it could not be said that Kerr relied upon such statements and acted in good faith, believing such statements to be true, hence the testimony of these witnesses was inadmissible and the court did not err in excluding the same.

It is next urged that the trial court erred in giving instruction No. 10; it being contended that said instruction singles out Haywood Rector and gives prominence to the alleged effort on behalf of the defendant to improperly secure evidence from him or influence him. The instruction is as follows:

"You are instructed that in considering the statements given in evidence by the different witnesses relative to statements of Haywood Rector, that you will consider it for one purpose and for one purpose only. and that is, to determine whether or not the defendant, through its agents, sought to

procure false testimony or to improperly influence said Haywood Rector, and you will not consider it to establish any other fact or facts in this case."

The defendant was permitted to prove that Haywood Rector had made certain statements to Hazel Jetmore and Arthur Jetmore, prior to the time Kerr took his affidavit, to the effect that he had set the compress on fire. This evidence was offered for the purpose of showing the good faith of Kerr in taking the affidavit.

It does not appear from the record that the fact that said statements had been made was ever communicated to Kerr, and therefore, following our conclusion in the discussion of the preceding assignment of error, such evidence was not admissible, but having been received, it was the duty of the court to instruct the jury as to the purpose for which the evidence was offered. Central of Ga. Ry. Co. v. Brown (Ga.) 74 S. E. 839; Missouri, K. & T. Ry. Co. v. Cherry. (Tex. Civ. App.) 97 S. W. 712; Pittsburgh, C. C. & St. L. Ry. Co. v. Parish (Ind.) 62 N. E. 514; St. L. & S. F. Ry. Co. v. Murray, 50 Okla. 64, 150 Pac. 884.

In the case of Pittsburgh, C. C. & St. L. Ry. Co. v. Parrish, supra, it is said:

"Where evidence is admitted as relevant to a particular issue, the court, upon proper request. should limit such evidence to the particular issue or question upon which it is competent."

In St. Louis & S. F. Ry. Co. v. Murray, supra, it is said:

"Where evidence may be admissible upon a certain point only, it is the duty of the court to advise the jury that they should consider such evidence on that point only."

We therefore conclude that the instruction was proper and the giving of it by the court was not error.

Complaint is also made to the giving of instruction No. 10½, which reads as follows:

"You are instructed if you find from the evidence in this case that the plaintiff or defendant. either one or both, through their authorized agents, made an effort to improperly influence any witness or prospective witness in this case by the employment of kinfolks, or otherwise to influence them, or if you find either side procured false statements or false affidavits of any witness or prospective witness, then you have a right to infer that their cause or contention in this lawsuit is not meritorious, but you are not compelled to do so. but you will take such circumstances, if any, together with all the other facts into consideration in reaching your conclusions."

Under the law as announced heretofore in this opinion, it was proper for the court to admit evidence tending to prove a fabricated defense, and this instruction properly instructed the jury as to the law on this question, and hence was not error.

Complaint is also made to the giving of instruction No. 2. This instruction is as follows:

"The jury are instructed that under the law of this state any fact or circumstances may be proven by circumstantial evidence, and that it is not necessary in the trial of a case of this kind that any witness should see particular sparks or cinders emitting from the engine, and see them fall upon the cotton on the compress, but that such fact may be determined from all the circumstances surrounding the premises at the time of the fire. In this connection you are instructed that the court has permitted to go to you evidence of other fires as tending to prove a negligent habit on the part of the defendant in allowing sparks and cinders to escape from its locomotive engine in operating his said locomotives along and upon the track south of the compress, and for the purpose of showing that it was possible for sparks and cinders emitting from said locomotive engine, while being operated along and upon the track south of the compress to come in contact with and ignite the cotton located upon said compress, and that such evidence was permitted to go to you for that purpose and that purpose alone."

Under the facts in this case, evidence of previous fires was admissible for all purposes, and the court should not have restricted the purpose for which it was offered. The instruction was more favorable to the defendant, in this regard, than it should have been, and hence did not operate to the prejudice of the defendant.

The same thing is true as to instruction No. 9. Ward v. Richards, 28 Okla. 629, 115 Pac. 791; C., R. I. & P. Ry. Co. v. Johnson. 25 Okla. 760, 107 Pac. 662; Barclay v. United States of America, 11 Okla. 503, 69 Pac. 798; Roberts v. Wilkins, 40 Okla. 138. 137 Pac. 111. The instruction is not bad because it contained the clause "as tending to prove a negligent habit on the part of the defendant in allowing sparks and cinders to escape from its locomotive engines," etc. While this was not an issue in the case, yet the giving of this instruction did not prejudice the substantial rights of the defendant, as it was more favorable to the defendant than it should have been.

In Snyder v. Stribling, 18 Okla. 168. 89 Pac. 222, it is said:

"An instruction which contains a verbal

inaccuracy will not be sufficient to invalidate a verdict where it is apparent that the jury could not have been misled thereby. Although an instruction given may misstate the law. i. others are given which when taken together with the improper one make it apparent that the jury was not misled thereby, the same will not constitute reversible error."

Taking this part of instruction No. 2 into consideration with instruction No. 3, it appears that the jury were prope ly instructed as to the law on this point.

Instruction No. 3 is also complained of, and is as follows:

"The jury are instructed that under the law of this state every railroad company, and the receivers thereof, where receivers have been appointed, are liable for all loss and damage caused by fire set out by locomotive engines operated by them, and that it is not necessary. under the statute, to prove negligence on the part of the defendant, and if you find and believe from a fair preponderance of the evidence in this case that locomotive engines operated by the defendant on the Katy tracks south of the compress emitted sparks and cinders, and that such sparks and cinders so emitted from such locomotive set fire to and burned the compress and the cotton belonging to the plaintiff, then your verdict should be for the plaintiff."

Instruction No. 7 is also complained of, and is as follows:

"You are instructed that under the law circumstantial evidence is legal evidence, and is entitled to the same consideration as direct evidence, and if such evidence. even though it be circumstantial, proves to your mind by a preponderance of the evidence that the plaintiff was the owner of the cotton. and that the same was destroyed by fire. and that the defendants set said fire by the operation of its engines, which resulted in damages to the plaintiffs. then you will find for the plaintiffs, otherwise you will find for the defendants. But in no class of evidence. either circumstantial or direct, have you the right to indulge in guess work and speculation, but you must be controlled by the evidence."

Counsel for defendant, in support of this contention that these instructions were erroneous, cite Metropolitan Electric Service Company et al. v. Walker et al. 102 Okla. 102, 226 Pac. 1042: and Standard Marine Ins. Co. v. Traders Compress Co., 46 Okla. 356, 148 Pac. 1019.

These cases deal with the liability of a bailee to the bailor where the goods bailed are lost or destroyed during the bailment. In such cases absence of negligence is a defense but in an action against a railroad company, or its receiver, to recover damages resulting from fire set by the operation of the railroad, the absence of negligence is not a defense, and therefore these cases have no application to the case at bar. The instant case is governed by the decision of this court in Midland Valley Ry. Co. v. Lynn, 38 Okla. 695, 135 Pac. 370, wherein it is said:

"The fact that the petition unnecessarily charges negligence does not prevent a recovery under the statute without proof of negligence."

It is next urged that the trial court erred in refusing to give defendant's requested instruction No. 4 and instruction No. 12, on circumstantial evidence. We have carefully examined all of the instructions of the court and are of the opinion that the law of circumstantial evidence is fairly covered, and therefore it was not error to refuse the offered instructions No. 4 and No. 12.

Counsel for defendant also complain of the first part of the court's instructions, wherein the court states to the jury the issues raised by the pleadings and evidence. We see no merit in this contention. It was the duty of the court in instructing the jury to clearly outline to them all the issues raised by the pleadings and evidence. This was done in this case sufficiently, we think, to present all the issues fairly to the jury.

Error is assigned by reason of certain statements made by counsel for plaintiffs in the closing argument to the jury. In view of the findings of the trial court, in reference to said statements, and after a careful consideration thereof, we cannot say that they were not warranted under all the facts and circumstances, or that they caused a miscarriage of justice. From the record, it appears that the statements complained of were either in answer to statements or argument made by counsel for the defendant or a comment upon the evidence in the case. In Enid City Ry. Co. v. Reynolds, 34 Okla. 405, 126 Pac. 193, this court says:

"A judgment will not be reversed because of remarks made by counsel in the closing argument, where such remarks are mere conclusions drawn from the circumstances surrounding the case, and from testimony admitted without objection."

In Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, the Criminal Court of Appeals said:

"Where the argument of the county attorney is not taken down in shorthand and embodied in the record in full. and a dispute arises as to what was said in argument. this court is bound by the finding of

the trial court recited in the record as to what occurred."

Counsel for defendant insist that the court erred in overruling the motion for a new trial because this action was not properly brought. Ed J. Coyle, it appears. was the owner of the cotton involved herein, which was destroyed by fire, and of the value of $17,910.56. He brought this action in his own name, joined by the Great American Insurance Company, and also as trustee. It also appears that the Great American Insurance Company carried part of the insurance on this cotton and after the fire paid Coyle $4,500; that the St. Paul Fire & Marine Insurance Company also carried part of the insurance, and after the fire paid Coyle $8,500; that the excess loss amounted to $1,910.50. It also appears that Coyle executed and delivered to each of these companies articles of subrogation and that he was willing that each company receive its pro rata share of any recovery. This question has been decided adversely to the contention of the defendant in the case of Kansas City, M. & O. Ry. Co. v. Shutt. 24 Okla. 96, 104 Pac. 51, where it is said:

"In this case the alleged assignment to the insurance company covered only that portion of the total loss as was paid to the assignor by the insurance company. It is well settled that the wrongful act by the defendant company in the burning of the barn, etc., was single and indivisible. and gives rise to but one liability. Aetna Insurance Co. v. Hannibal & St. Joseph R. Co.,. 3 Dill. 2, Fed. Cas. No. 96; Hesser v. Johnson, 13 Okla. 53, 74 Pac. 320. See, also, Chicago, etc., v. Pullman, etc., 139 U. S. 79. 11 Sup. Ct. 490, 35 L. Ed. 97; Pennsylvania v. Mannheim (D. C.) 56 Fed. 303; Southern Bell Telephone Co. v. Watts, 66 Fed. 464. 13 C. C. A. 579; Sun Mut. Fire Ins. Co. v. Mississippi Valley Co. (C. C.) 17 Fed. 923; In re Harris, 57 Fed. 247, 6 C. C. A. 320; Hall v. Railroad, 13 Wall. 367, 20 L. Ed. 594. Hence. it appears that in any event, whether as assignor of the alleged claim, or whether as subrogated to the rights of the assured. the plaintiff Franklin Shutt was a proper party plaintiff. As the assured he was the trustee for the assurer for whatever amount was paid by it to him under said policy. With the matter of adjustment or settlement between them the defendant had no concern. If the assurer did not elect to intervene and have the amount awarded to it in that action. but preferred to await the result of the action, relying upon an accounting with the assured as to its subrogated rights, that could not prejudice the plaintiff in error. Further, if the assured executed the assignment as alleged, he was a proper party to prosecute the suit for himself, and also for the use and benefit of the insurance company. as the action was single and indivisible, not being separable.

"The defendant in its answer insisted that the entire action had been assigned. There was no evidence offered to that effect. The only attempt made tended to show an assignment pro tanto; but in no event is the plaintiff in error in an attitude to complain. When the original petition was filed, the plaintiff Franklin Shutt and the St. Paul Fire and Marine Insurance Company were joined as plaintiffs. Defendants then insisted that there was a defect of parties plaintiff, which contention was sustained. In the last-amended petition the insurance company is joined in the caption as a coplaintiff with Franklin Shutt and the relief prayed for is solely in behalf of Franklin Shutt. Under any contingency the plaintiff Franklin Shutt is a proper plaintiff to recover in this action, and, the insurance company being joined therein. under the record in this case the plaintiff in error is amply protected. The insurance company will not be heard in any other tribunal, in any other action, to complain against the plaintiff in error. It is of no consequence to it as to what settlement may be made between the insurance company and the plaintiff Franklin Shutt."

Ed J. Coyle was a proper party plaintiff, and could have maintained the action in his own name, or if he so desired he could join the insurance companies, and maintain the action with them and as trustee for their use and benefit. The fact that only one of the companies was named in the petition is of no concern to the defendant. as they were not necessary parties plaintiff. The defendant is amply protected by the verdict and judgment in this case from any claims that might hereafter be made by any of the parties. The ruling of the trial court on this point was not error.

From a careful examination of the voluminous record in this case, and after considering the various questions which have been most ably presented by counsel for both parties in briefs containing about 1,000 pages, we are of the opinion that in this case there has not been a miscarriage of justice, and that the verdict and judgment of the court is amply supported by the evidence, and that no error occurred in the trial of the cause which affected the substantial rights of the defendant.

It is only where the errors complained of have resulted in a miscarriage of justice or constitute a substantial violation of some constitutional or statutory right that this court will reverse a cause because of admission or rejection of evidence. the giving or refusing of instructions, or because of errors in matters of pleading or procedure.

For the reasons above stated, the judgment of the lower court is affirmed.

HARRISON, PHELPS, LESTER, HUNT, RILEY, and CLARK, JJ., concur. NICHOLSON, C. J., dissents.